**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MANUEL NUNEZ,

                     Plaintiff,

         v.

D. DONAHUE; et al.,

                     Defendants.

_____

No. 9: 12-CV-1071
(BKS/CFH)

**APPEARANCES:**

MANUEL NUNEZ
97-A-0205
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562
Plaintiff <u>Pro Se</u>

HON. ERIC T. SCHNEIDERMAN
Attorney General for the
State of New York
The Capitol
Albany, New York 12224-0341
Attorneys for Defendants

**OF COUNSEL:**

CHRISTOPHER W. HALL, ESQ.
Assistant Attorney General

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

     Plaintiff Manuel Nunez ("Nunez" or "Plaintiff"), an inmate who was, at all relevant times,

in the custody of the New York Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983.  Dkt. No. 62 ("Am. Compl.").

Presently before the undersigned is defendants' motion for summary judgment and

---

       [1]  This matter was referred to the undersigned for Report and Recommendation pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

dismissal of Nunez's amended complaint pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56. Dkt. No. 105. Nunez has opposed the motion. Dkt. No. 113. For the following reasons, it is recommended that defendants' motion be granted.

## I. BACKGROUND

### A. **Authentication of Exhibits /Verified Amended Complaint**

As a threshold matter, Nunez claims that, due to unforeseeable events at Clinton Correctional Facility in June 2015, his legal documents were confiscated and have not been returned. Dkt. No. 113 at 5. Therefore, in opposition to defendants' motion, Nunez relies upon and references documents annexed as exhibits to his amended complaint. See generally Id.. In total, over 500 pages of documents were annexed to the amended complaint. Defendants have not objected to the authenticity of any document referenced in Nunez's opposition and annexed to Nunez's amended complaint. Therefore, the undersigned will consider the documents in the context of the within motion. See United States v. Painting known as Hannibal, No. 07-CV-1511, 2010 WL 2102484, at *1, n.2 (S.D.N.Y. May 18, 2010) (citing Daniel v. Unum Provident Corp., 261 F. App'x 316, 319 (2d Cir. 2008) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party.")).

Nunez also relies upon his verified amended complaint and asks for the pleading to be viewed as an affidavit for summary judgment purposes. Dkt. No. 113 at 5. "[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d. Cir. 2004). In

2

considering whether there are material issues of fact, "[a] verified complaint is to be treated as an affidavit for summary judgment purposes . . . provided that it meets the other requirements for an affidavit under Rule 56(e)." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citing Fed. R. Civ. P. 56(e) (requiring affidavits to be made on personal knowledge, to set forth facts that would be admissible in evidence, and to demonstrate the affiant's competency to testify to matters in the affidavit). To be sufficient to create a factual issue, "a verified complaint must be based on personal knowledge." Gill v. Frawley, No. 02-CV-1380 (TJM/GHL), 2006 WL 1742738, at *4 (N.D.N.Y. June 22, 2006) ("An affidavit (or verified complaint) is not based on personal knowledge if, for example, it is based on mere 'information and belief' or hearsay"). The affidavit or verified pleading is insufficient to create a factual issue where it is "unsubstantiated by any other direct evidence." Id.

Here, Nunez's amended complaint is notarized and contains a verification pursuant to 28 U.S.C. § 1746. Dkt. No. 62 at 65. Accordingly, the undersigned will treat the amended complaint as an affidavit.

In support of the motion, defendants filed a Statement of Material Facts.[2] Nunez

---

[2] Local Rule 7.1(a)(3) states:

> Summary Judgment Motions
>
> Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.
>
> The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the

submitted a response with additional facts.  Defendants have not replied to Nunez's response.  To the extent that the "facts" asserted by defendants and Nunez in the respective Statements of Material Facts are supported by the record, the undersigned will consider them in the context of the within motion.[3]  The facts recited are for the relevant time period referenced in the complaint.

## B. **Facts**

The facts are related herein in the light most favorable to Nunez as the nonmoving party.  At the time of the incidents described in the amended complaint, Nunez was confined at Clinton Correctional Facility ("Clinton C.F.") and Coxsackie Correctional Facility ("Coxsackie C.F.").  Dkt. No. 62 at 3.[4]  From July 24, 2009 through July 27, 2009, an institutional lockdown was in place at Clinton C.F.  Dkt. No. 105-2 at 38.  During the lockdown, the staff searched all cells, shops, and program areas.  Id.  Nunez stored personal property including a radio/cassette player with headphones and other "minor items," in the tailor shop where he worked.  Id.  On July 28, 2009, Nunez returned to work and noticed that his property was missing; as a result, on July 29, 2009, Nunez filed a property claim with defendant D. Donahue ("Donahue"), the head account clerk in charge of

---

Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

Local Rule 7.1(a)(3).

[3] The only exhibit annexed to defendants' moving papers is the Nunez's deposition transcript.  As discussed supra, plaintiff did not annex any exhibits to his opposition.

[4] Citations to page numbers refer to the pagination generated by CM/ECF, not the page numbers generated by the parties.

4

approving inmate property claims at Clinton C.F.  Dkt. No. 105-2 at 30; 38; Dkt. No. 62 at 7.

On August 17, 2009, Donahue denied the claim and advised Nunez that the property was

confiscated because it was left unattended in a common area.  Id. at 38-39; Dkt. No. 62-2 at

55.  On August 20, 2009, Nunez appealed the denial, and on September 3, 2009, it was

denied.  Dkt. No. 62 at 8-9; Dkt. No. 62-2 at 59.  On October 15, 2009, Nunez served on the

Attorney General a Notice of Intention to File a Claim related to his confiscated property.

Dkt. No. 105-2 at 42; Dkt. No. 62-1 at 16.

On December 27, 2009, Nunez gave three envelopes marked "legal," and three

disbursement forms to defendant G. Palmer ("Palmer"), an A-Block Correctional Officer.

Dkt. No. 62-1 at 30; 43.  Nunez does not know what Palmer did with the envelopes after he

took them from him.  Dkt. No. 105 at 35; 43. The envelopes were addressed: to the New

York Court of Claims ("Court of Claims"), the New York State Attorney General's Office, and

the Business Office at Clinton C.F.  Dkt. No. 62-1 at 31.  The envelope for the Court of

Claims contained Nunez's personal property complaint.  Dkt. No. 105-2 at 31-32.  The

envelope for the Business Office held a fifty dollar disbursement form authorizing the

Business Office to mail a filing fee to the Court of Claims.  Id.  Nunez received receipts

indicating that the Court of Claims and the Attorney General's Office received the envelopes

intended for those offices.  Dkt. No. 105-2 at 32.  He did not receive confirmation from the

Business Office at Clinton C.F.  Id. at 33.

On January 8, 2010, Nunez received his Inmate Financial Statement which indicated

that funds were disbursed for the postage for the envelopes to the Court of Claims and

Attorney General's Office.  Dkt. No. 105-2 at 33.  Nunez did not receive confirmation that

the accounting office disbursed any funds to the Court of Claims for the filing fee.  Id. at 34.

5

The filing fee was eventually submitted and the claim was filed with the Clerk of the Court of Claims on January 27, 2010. Dkt. No. 62-1 at 16. On May 3, 2010, Nunez's Court of Claims case was dismissed for late filing, as the court did not timely receive his filing fee. Dkt. Nos. 62-1 at 17, 105-2 at 53-54.

On May 24, 2010, Nunez filed a grievance (CL 59922-10) against "the inmate account dept." with respect to the delay in sending his filing fee and claimed that the failure to send the requested filing fee resulted in a denial of his access to the courts. Dkt. No. 105-1 at 9; Dkt. No. 113 at 19; Dkt. No. 62-5 at 3-4. Nunez sought payment of $168.88 for the amount of his underlying property claim and indicated that if he did not receive payment, he would file a § 1983 federal lawsuit. Dkt. No. 62-5 at 4. On June 29, 2010, defendant M. Patnode ("Patnode"), Deputy Superintendent of Programs, issued a decision denying Nunez's grievance. Id.; Dkt. No. 62-5 at 13. On September 8, 2010, defendant Karen Bellamy ("Bellamy") issued a decision from the Central Office Review Committee ("CORC") denying Nunez's appeal. Dkt. No. 62-5 at 22.

On September 21, 2010, Nunez met with defendant Julie Lapoint-Kelsh ("Kelsh"), his counselor, for a scheduled quarterly evaluation. Dkt. No. 105-2 at 67, 72. One of the topics discussed during the evaluation is a prisoner's suitability for transfer. Id. at 72. During Nunez's evaluation, Kelsh prepared a Transfer Review Form and told Nunez that he may be transferred in accordance with departmental needs. Id. at 69. Nunez told Kelsh that he did not want to be transferred. Id. at 96. Kelsh noted on the form that Nunez wished to remain at Clinton C.F. and executed the transfer evaluation. Dkt. No. 105-2 at 69, 71, 78. Kelsh forwarded the form to her supervisor, defendant K. Koktowski ("Koktowski"), the Senior Counselor. Id. at 73. On September 23, 2010, Koktowski signed the transfer evaluation

6

form. Id. at 74, 78; Dkt. No. 62-6 at 19. Koktowski sent the form to defendant A. Garman ("Garman"), Deputy Superintendent of Programs at Clinton C.F. Id. On September 28, 2010, Garman signed the transfer evaluation form. Dkt. No. 105-2 at 74, 78; Dkt. No. 62-6 at 19. Patnode did not sign the transfer form. Dkt. Nos. 150-1 at 4, 113 at 16. Nunez did not speak with Donahue regarding this transfer. Id. DOCCS Central Office approved the transfer. Dkt. No. 105-2 at 98.

On October 15, 2010, Nunez was transferred from Clinton C.F. to Coxsackie C.F. Dkt. No. 105-2 at 61. Before his transfer, Nunez was advised that certain items of personal property were not permitted at Coxsackie C.F. Id. at 113. Therefore, Nunez mailed his personal property, including a television and a Yamaha keyboard, to his home. Id. at 112.

On November 1, 2010, Nunez filed a grievance (CX-16173-010) claiming that he was transferred to Coxsackie C.F. in retaliation for exercising his constitutional rights. Dkt. Nos. 1-9 at 3, 150-2 at 80, 62-8 at 3. On November 10, defendant Lieutenant Weeks ("Weeks") interviewed Nunez about this grievance. Dkt. No. 105-2 at 83, 87. During the interview, Weeks "advised" Nunez not to file any more complaints at Coxsackie C.F. Id. at 84. Weeks also told Nunez that he was being transferred back to Clinton C.F.[5] Id. at 85. On Friday, November 12, Nunez was moved to the reception area to wait for the transfer. Dkt. No. 105-2 at 85-86. Nunez remained in his cell in the reception area until his transfer on the morning of November 16. Id. at 86. During this time, Nunez was not permitted to work at his job as a tailor. Id. at 85.

_____

[5] On November 19, 2010, the Superintendent at Coxsackie C.F. issued a decision denying Nunez's November 1, 2010 grievance. Dkt. No. 62-8 at 11. The Superintendent, who is not a party to this action, indicated that the transfer was "in error." Id. Nunez was transferred to Coxsackie C.F. for program purposes, "as he was deemed Maximum B eligible." Id. It was later determined that Nunez was Maximum A eligible. Id.

On November 18, 2010, Nunez returned to Clinton C.F. Dkt. No. 105-2 at 68. Upon his return, Nunez received a promotion to "Tailor Eight" with "top pay," back pay, payment for his television, and for "pain." Id. at 102-103. When Nunez returned to Clinton C.F., he inquired about his television and keyboard, and asked that they be returned. Id. at 114. On December 10, 2010, Nunez filed a grievance (CL-60523-10) regarding this issue, among others. Dkt. Nos. 62-9 at 3, 150-2 at 114. Nunez indicated that he was seeking "restitution for a transfer that was done in 'error.'" Dkt. No. 62-9 at 3. Three days later, Nunez received a television from defendant S. Lacy ("Lacy"), a Captain at Clinton C.F. Dkt. No. 150-2 at 112, 114-115. When Nunez attempted to watch the television, the channels were "fuzzy." Dkt. No. 150-2 at 115. On December 14, 2010, Nunez wrote to Lacy and told him that he could not accept the television. Id. at 116.

On December 20, 2010, Nunez returned to his cell to find that the cable jack had been replaced. Dkt. No. 150-2 at 116. When Nunez connected the television, the channels were "snowy." Id. That day, Kelsh met with Nunez at the tailor shop. Id. at 126. Kelsh told Nunez he was scheduled for another transfer and asked Nunez to sign an evaluation form. Id. at 126. Nunez refused, and Kelsh left the shop. Id.

On December 21, 2010, Nunez filed an inmate property claim with respect to the television and keyboard. Dkt. No. 150-2 at 117-118. On December 22, 2010, Nunez wrote another letter to Lacy about the television and cable jack. Dkt. No. 150-2 at 118. On December 23, at approximately 2:00 p.m., defendant Correctional Officer R.S. Lilledahl ("Lilledahl") searched Nunez's cell and issued a misbehavior report. Id. at 118, 127; Dkt. No. 62-11 at 26. The cell search was authorized by defendant Captain J. Facteau ("Facteau"). Dkt. No. 150-2 at 119. According to the misbehavior report, Lilledahl

searched the cell while Nunez was at work and found two televisions in Nunez's cell – the one Lacy gave to Nunez and a black-and-white television discovered under Nunez's bed. Dkt. No. 150-2 at 127-28. Nunez was charged with rule violations involving unauthorized exchange, contraband, and stolen property. Id. at 136.

On December 27, 2010, defendant Lieutenant J. Miller ("Miller") presided over a hearing related to Nunez's misbehavior report arising out of the cell search. Dkt. No. 150-2 at 130. As a result of the hearing, Miller sentenced Nunez to fifteen days in disciplinary confinement. Id. at 134. Consequently, Nunez was removed automatically from Honor Housing. Id. at 133-34. While serving his fifteen-day sentence, Nunez experienced normal conditions of keeplock confinement. Dkt. No. 150-1 at 8; Dkt. No. 113 at 19. Lacy denied Nunez's administrative appeal of Miller's tier hearing decision. Dkt. No. 150-2 at 145-56.

On January 5, 2011, defendant J. E. Proulx ("Proulx"), Superintendent at Clinton C.F., issued a decision denying Nunez's December 2010 grievance relating to his television and keyboard. Dkt. No. 62-9 at 33. On January 20, Donahue denied Nunez's property claim stating, "staff followed proper procedures while packing [Nunez's] property for transfer to Coxsackie C.F." Dkt. No. 150-2 at 123.

### C. **Procedural History**

On July 5, 2012, Nunez filed his complaint in this action. Dkt. No. 1. Upon review of the complaint, the Court directed defendants Donahue, Palmer, Patnode, Kelsh, Koktowski, Garman, Weeks, Lacy, Facteau, Lilledahl, Miller, LaValley, Bellamy, and Proulx to respond. Dkt. No. 6. On August 6, 2014, Nunez filed an amended complaint. Dkt. No. 62. On July 10, 2015, defendants filed the within motion pursuant to Fed. R. Civ. P. 56 seeking

summary judgment and dismissal of the complaint.  Dkt. No. 105.  Nunez opposed the motion.  Dkt. No. 113.

## II.  DISCUSSION[6]

In the amended complaint, Nunez alleges that Donahue and Palmer denied him access to courts when they interfered with his legal mail, which delayed the payment of his filing fee and caused his Court of Claims action to be dismissed.  Nunez filed a grievance in May 2010 claiming that Donahue, Patnode, Kelsh, Koktowski and Garman retaliated against him by transferring him to Coxsackie C.F.  After arriving at Coxsackie C.F., Nunez filed another grievance stating that Weeks retaliated against him when Weeks threatened and confined him for four days in the reception area.  Upon Nunez's return to Clinton C.F., Nunez filed another grievance in December 2010, claiming that Lacy, Donahue, Kelsh, Facteau, Lilledahl, and Miller retaliated against him when they searched his cell, filed a false misbehavior report and removed Nunez from Honor Housing.  Nunez alleges that his Fourteenth Amendment right to due process was violated by Miller at a disciplinary hearing related to the false misbehavior report.  Nunez also asserts supervisory liability claims against Bellamy, Lacy, LaValley, Patnode, and Proulx for failure to remedy the aforementioned constitutional violations and conspiracy claims against all defendants.

### A.  **Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any

---

[6]  All unpublished opinions cited to by the undersigned in this Report-Recommendation are, unless otherwise noted, attached.

material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law. FED R. CIV. P. 56(a). The moving party has the burden to show the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion. FED R. CIV. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial, and must do more than show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party. Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1998).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest,". . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse

11

> frivolous or vexatious filings by pro se litigants," . . . and that
> pro se status "does not exempt a party from compliance with
> relevant rules of procedural and substantive law"

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d

185, 191-92 (2d Cir. 2008).

## B. **Denial of Access to Courts**

It is well settled that prisoners have a constitutional right to meaningful access to the

courts. Bounds v. Smith, 430 U.S. 817, 824 (1977); Lewis v. Casey, 518 U.S. 343, 350

(1996) ("The right that Bounds acknowledged was the (already well-established) right of

access to the courts."). This right is implicated when prison officials "actively interfer[e] with

inmates' attempts to prepare legal documents[ ] or file them[.]" Lewis, 518 U.S. at 350

(internal citations omitted). To establish a denial of access to the courts claim, a plaintiff

must satisfy two prongs; first, a plaintiff must show that the defendant acted deliberately

and maliciously, Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003), second, the plaintiff

must demonstrate that he suffered an actual injury, "i.e. [the defendant] took or was

responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." Monsky v.

Moraghan, 127 F.3d 243, 247 (2d Cir. 1997) (internal citations, quotation marks, and

alterations omitted) (quoting Lewis, 518 U.S. at 329). Thus, a plaintiff must allege that the

defendant was "responsible for actions that hindered his efforts to pursue a legal claim."

Davis, 320 F.3d at 351 (internal quotation marks omitted). "Interference with legal mail

implicates a prison inmate's rights to access to the courts and free speech as guaranteed

by the First and Fourteenth Amendments to the U .S. Constitution." Id.

Nunez claims that Donahue interfered with his mail because Nunez served a Notice of

Intention to File a Claim related to Donahue's denial of his property claim. See Dkt. No. 105-2 at 42, 49. Nunez's allegations are based entirely upon speculation and are unsupported by any admissible evidence. In his opposition, Nunez claims that "circumstantial evidence" establishes that Donahue and Palmer denied him access to the courts. Dkt. No. 113 at 5. However, Nunez's deposition testimony belies his allegations. With respect to Palmer, Nunez testified that he "does not know" what Palmer did with the envelopes and forms after Palmer left his cell and Nunez stated that he "believes" that Palmer delivered the three envelopes. Dkt. No. 105-2 at 32-34, 37, 44. Regarding Donahue, Nunez allees that Donahue had a "motive . . . to prevent [the envelope] from going to the Court of Claims." Dkt. No. 150-2 at 34, 50. He contends that her motive is that she had previously denied his property claim taken from the program area and, thus, "had the motive to ensure that Plaintiff could not challenge her decision in court." Dkt. No. 113 at 4. However, Nunez admitted that Donahue was not present when he gave the envelopes to Palmer, and further, that he does not know whether Donahue prevented the processing of the disbursement forms. Dkt. No. 150-1 at 2; Dkt. No. 150-2 at 50; Dkt. No. 113 at 16.

Based upon the record herein, no reasonable juror could conclude that Palmer or Donahue acted deliberately or maliciously in an attempt to hinder Nunez's access to the courts. Although Nunez's allegations were sufficient to survive the pleading stage, on a motion for summary judgment, Nunez must come forward with competent, admissible evidence demonstrating a triable issue of fact for a jury to resolve. FED. R. CIV. P. 56(a). Nunez has not met that burden.

Accordingly, it is recommended that defendants' motion on this ground be granted.

C. **Retaliation**

Nunez alleges that various defendants retaliated against him for engaging in protected activity. Specifically, Nunez filed a grievance in May 2010 and claims that Donahue, Patnode, Kelsh, Koktowski, and Garman retaliated against him and transferred him to Coxsackie C.F. After arriving at Coxsackie C.F., Nunez filed another grievance contending that Weeks retaliated against him when he threatened and confined him in the reception area for four days. Upon Nunez's return to Clinton C.F., in December 2010, he filed another grievance arguing that Lacy, Donahue, Kelsh, Facteau, Lilledahl, and Miller retaliated against him when they searched his cell, filed a false misbehavior report, and removed him from Honor Housing.

To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that: (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted); Tafari v. McCarthy, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010). In the prison context, "adverse action" is objectively defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003). "[A]dverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone." Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008). "In order to prove an adverse action, a plaintiff must show that the defendant's 'retaliatory conduct . . . would deter a similarly situated individual of ordinary firmness from exercising

14

his or her constitutional rights . . . . Otherwise, the retaliatory act is simply de minimis, and therefore outside the ambit of constitutional protection.'" McFadden v. Friedman, 12-CV-685 (GTS/CFH), 2015 WL 5603433, at *9 (quoting Roseboro v. Gillespie, 791 F. Supp. 2d 353, 366 (S.D.N.Y. 2011) (additional internal quotation marks omitted).  "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." Barclay v. New York, 477 F. Supp. 2d 546, 588 (N.D.N.Y. 2007) (citations omitted).

> There is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, so courts judge the permissible inferences that can be drawn from temporal proximity in the context of particular cases.  However, courts have found that six and eight month gaps between the protected conduct and adverse action were sufficient, while in other circumstances three months was considered too long.

Burton v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

If the plaintiff establishes these elements, the burden shifts to the defendants to show by a preponderance of the evidence that they would have taken the same action against the plaintiff absent his exercise of the protected conduct.  See Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).  Courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration.  Jackson, 549 F.Supp.2d at 214-15.  Therefore, conclusory allegations alone are insufficient.  Id. at 214 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

## 1. **Retaliatory Transfer**

Although a prisoner has no liberty interest in remaining at a particular correctional facility, prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally-protected rights. <u>Davis v. Kelly</u>, 160 F.3d 917, 920 (2d Cir. 1998). "In a § 1983 claim alleging retaliatory transfer, the plaintiff bears the burden of showing that the conduct or speech at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in defendants' decision to transfer him." <u>Gonzalez v. Narcato</u>, 363 F. Supp. 2d 486, 496-97 (E.D.N.Y. 2005) (citing <u>Graham</u>, 89 F.3d at 80-81). If the plaintiff carries this burden, it is for the defendants to show by a preponderance of the evidence that the plaintiff would have been transferred even in the absence of the protected conduct. <u>Id.</u>

### a. **Kelsh, Kotowski, and Garman**

On May 24, 2010, Nunez filed a grievance against the "inmate account dept." related to his access to the courts claim. Dkt. Nos. 105-1 at 9, 113 at 19, 62-5 at 3. Four months later, in September 2010, Kelsh, Koktowski, and Garman executed Nunez's transfer form. Dkt. No. 105-2 at 71. Kelsh, Koktowski, and Garman claim that they made the decision to transfer Nunez as "part of their normal job duties." Dkt. No. 105-3 at 7.

Even assuming Nunez engaged in protected conduct and suffered from an adverse action, Nunez has failed to present any evidence that would permit a jury to conclude that Kelsh, Koktowski, and Garman transferred Nunez in retaliation for his exercise of his First Amendment rights. The record lacks any evidence establishing that Kelsh, Koktowski, and

Garman were aware of the May 2010 grievance when they executed the forms to implement Nunez's transfer.  See Butler v. Westchester Cnty., No. 94 CIV. 8216, 2000 WL 335539, at *7 (S.D.N.Y.  Mar. 30, 2000); see also Napoleoni v. Scully, 932 F.Supp. 559, 563-64 (S.D.N.Y. 1996) (granting summary judgment dismissing claim for retaliatory transfer where the plaintiff failed to allege facts indicating that the defendant was aware prior to the transfer that the plaintiff intended to file a lawsuit).  Moreover, even if Nunez established that Kelsh, Koktowski, and Garman were aware of his grievance against "the inmate account dept.," the evidence does not establish any retaliatory animus on the part of these defendants.  The May 2010 grievance does not mention or involve Kelsh, Koktowski, and Garman.  Further, the record is devoid of any evidence suggesting that Kelsh, Koktowski, or Garman were motivated by Nunez's protected conduct.  Indeed, there are no factual allegations against these defendants; rather, Nunez relies on the vague statement that defendants executed forms that "set the wheel in motion for the transfer."  Dkt. Nos. 113 at 16, 105-2 at 73.

   To the extent that Nunez relies on the temporal proximity of four months between the grievance and the transfer to establish a causal connection, the timing is insufficient, without more, to show causal connection between the protected activity and plaintiff's transfer in order to establish prima facie case of retaliation.  See Dixon v. Int'l Fed'n of Accountants, 416 F. App'x 107 (2d Cir. 2011) (citations omitted); Germany v. New York State Dep't of Corr. Servs., No. 03 CIV. 148, 2005 WL 2036027, at *17 (S.D.N.Y. Aug. 17, 2005) (holding that no reasonable juror could conclude that there was a causal connection between the plaintiff's complaint against one defendant and subsequent retaliatory conduct by other defendants commencing no earlier than four months after the alleged complaint).

### b. **Patnode and Donahue**

With respect to Patnode and Donahue, Nunez has failed to establish that these defendants were personally involved in the decision to transfer him to Coxsackie C.F. Patnode did not sign the transfer form, and Nunez admitted that he never spoke with Donahue regarding this transfer. Dkt. Nos. 62-6 at 19,150-2 at 65. Thus, Nunez has failed to present any evidence of Patnode's and Donahue's personal involvement in his transfer. See Muhammad v. Francis, 94 Civ. 2244, 1996 WL 657922 at *9 (S.D.N.Y. Nov. 13, 1996) (awarding summary judgment for the defendants on retaliatory transfer claims where the plaintiff failed to allege or prove that the defendants were personally involved in the transfer). Nunez cannot defeat the summary judgment motion with conclusory allegations and speculation. See Ying Jing Gan v. City of N.Y., 996 F.2d 522, 532 (2d Cir. 1993). Accordingly, the undersigned recommends that defendants' motion for summary judgment be granted on this ground.

### 2. **Retaliatory Confinement**

Nunez claims that Weeks retaliated against him for filing a grievance on November 1, 2010 claiming that he was transferred improperly to Coxsackie C.F. by confining him for four days in the reception area at Coxsackie C.F. and threatening him in a November 10 interview. Dkt. No. 1-9 at 3; Dkt. No. 150-2; Dkt. No. 62-8 at 3. Weeks argues that Nunez did not exhaust his administrative remedies for the retaliation claim related to his confinement in the reception cell. Dkt. No. 105-3 at 10, 11. Weeks also argues that verbal threats or harassment are not actionable under § 1983. Dkt. No. 105-3 at 15.

18

a. **Exhaustion**

Under 42 U.S.C. § 1997e(a), the Prison Litigation Reform Act ("PLRA"), an inmate must exhaust all administrative remedies before bringing an action for claims relating to his incarceration. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted). The exhaustion requirement applies even if the administrative grievance process does not provide for all of the relief requested by the inmate. Nussle, 534 U.S. at 524.

There is no dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES. R. & REGS. tit. 7, § 701.5 (2014). "The New York IGP regulations do not state that a prisoner's grievance must name the responsible party." Espinal v. Goord, 448 F.3d 119, 126 (2d Cir. 2009). The regulations state that the grievance should "contain a concise, specific description of the problem." Id. "Providing the date, time and location [is] deemed sufficient . . . to place the facility on notice of the relevant incident." Brown v. Austin, No. 05 Civ. 9443, 2009 WL 613316, at *4 (S.D.N.Y. Mar. 4, 2009) (quoting Espinal, 448 F.3d at 126) ("The point is that prison officials had the necessary information to investigate the complaints and the opportunity to learn which officers were involved in the alleged incident."). "[T]he filing and exhaustion of a grievance does not grant plaintiff leave to sue 'anyone who was in any way connected with the events giving rise to that grievance.'" Smart v. Goord, 441 F. Supp. 2d 631, 639 (S.D.N.Y. 2006). The grievance must sufficiently alert prison authorities that the inmate is "alleging some wrongdoing beyond the facts specifically described in the grievance." Id.

In support of the motion for summary judgment, defendants rely upon Nunez's "seven page grievance" and argue that Nunez only "briefly mentioned Lt. Weeks' interview," in a grievance that "concerned plaintiff's complaint that he lost property." Dkt. No. 150-3 at 12. Defendants also claim that the "Superintendent's decision" and Nunez's appeal to CORC "failed to mention Lt. Weeks." Id. Nunez counters that he is not required to specifically name Weeks or present legal theories in a grievance. Dkt. No. 113 at 7. Rather, Nunez contends that his December 10, 2010 grievance addressed Weeks' actions, and, thus, he has sufficiently exhausted his administrative remedies. Id.

In the December 10, 2010 grievance, Nunez described his interview with Weeks and alleged that Weeks "advised" him not to write anymore grievances or complaints against staff. Dkt. No. 62-9 at 3. Nunez described the interview as an "intimidation tactic." Id. During his deposition, Nunez was asked the following questions and gave the following answers regarding that grievance:

> Q.    Okay.  What grievance did you write that mentioned Lieutenant Weeks threatening you?
>
> A.    I believe it's in the grievance when I came here on - - let me search for it.
>
>             *       *       *
>
> Q.    And the grievance number is C.L. 60526-10; correct?
>
> A.    Yes.
>
>             *       *       *
>
> Q.    And in that grievance, where do you mention Lieutenant Weeks?
>
> A.    On - - on page number three.

20

Q.     Okay.

A.     I say (Reading) On November 10, 2010 I was brought
       to an office and interviewed by Lieutenant Weeks for
       issue [sic] of raising the grievance C.X. one sixty-one
       seventy-three dash o one, dealing with Coxsackie
       Correctional Facility.  It says, I was advised, in
       quotation marks, by Lieutenant Weeks not to write any
       more grievances or complaint [sic] against staff.

Dkt. No. 105-2 at 90-92.  When Nunez was asked if he knew whether Weeks transferred

Nunez to the reception area, Nunez responded, "I don't have any paperwork, didn't grieve

that."  Id. at 84.

Based upon the record, the undersigned concludes that Nunez failed to exhaust his

administrative remedies in relation to the retaliation claim involving his four-day confinement

in the reception area.  Although the December 10, 2010 grievance addressed Weeks'

threat, Nunez did not complain or claim that Weeks' was responsible for Nunez's four-day

confinement.  Nunez specifically referenced Weeks only in relation to the November 10,

2010 interview.  Nothing in the grievance could reasonably have led prison authorities to

conclude that Nunez was making an allegation against Weeks for retaliation related to his

four-day confinement in the reception area pending transfer.  See Smart 441 F. Supp. 2d at

639.

Accordingly, it is recommended that defendants' motion for summary judgment insofar

as it seeks dismissal of the retaliation claim against Weeks based upon the four-day

confinement for failure to exhaust pursuant to 42 U.S.C. § 1997e(a) be granted.

b. **Alternative Merits Argument**

In the event that the District Judge determines that Nunez properly exhausted his claim

that Weeks retaliated against him by placing him in confinement for four days, it is alternatively recommended that defendants' motion for summary judgment dismissing this claim be denied.  During Nunez's deposition, he testified that after his interview with Weeks, he was transferred to the reception area and "locked in a cell for several days without recreation."  Dkt. No. 105-2 at 84.  Nunez was not permitted to go to his job as shop tailor. Id. at 86.

Weeks does not dispute that Nunez engaged in protected conduct; rather, Weeks argues that a prisoner confined over a weekend to a cell awaiting a transfer would not "deter a prisoner of 'ordinary firmness' from filing grievances."  Dkt. No. 105-3 at 11.[7] Plaintiff has presented issues of material fact with respect to the "adverse action" prong of Nunez's retaliation claim that must be resolved by a jury.  See Shaheen v. McIntyre, 05-CV-173 (TJM/GHL), 2007 WL 3274835 (N.D.N.Y. Nov. 5, 2007);  Gill v. Hoadley, 261 F. Supp. 2d 113, 123-24 (N.D.N.Y. 2003) (recommending that the district judge deny the defendants' motion to dismiss for failure to state a claim because the plaintiff's allegation of keeplock confinement for three periods of four days, twenty-one days, and twenty-one days constituted allegation of "adverse action" for purposes of First Amendment retaliation claim).

Further, plaintiff has meet his burden on the causal connection prong.  As noted, plaintiff must demonstrate that "the protected conduct was 'a substantial or motivating

_____

[7] "Upon the establishment of such a prima facie case, the burden of going forward shifts to the defendant to articulate a legitimate non-discriminatory reason for taking the action under consideration." Brock v. Casey Truck Sales, Inc., 839 F.2d 872, 876 (2d Cir.1988).  Here, however, defendants have not argued that they would have taken the same action – placing Nunez in the reception cell for four days – even absent retaliatory conduct.  Mount Healthy.  Thus, they have not met their burden of pleading that, even if the conduct was adverse,

22

factor' in the defendants' decision to take action against the plaintiff." Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Graham, 89 F. 3d at 79. First, plaintiff has demonstrated close temporal proximity between the protected conduct and the adverse action insofar as he alleges that he filed a grievance at Coxsackie regarding his transfer on November 1, 2010, and at a November 10, 2015 interview, he was threatened and then was sent to the reception cell the following day. See King v. McIntyre, 11-CV-1457, 2015 WL 1781256, at *5 ("The Second Circuit has held that the passage of 'only six months' is sufficient to support an inference of a causal connection.") (quoting Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (additional citation omitted). Further, plaintiff alleges that, during this interview, Weeks referenced his filing of grievances, "suggesting that an improper motive played a substantial part in the defendant's action." Shaheen, 2007 WL 3274385, at *8. In their motion for summary judgment, defendants have not contended that inmates are routinely placed in a reception area and denied work and recreation pending transfer. Thus, defendants have not met their burden of demonstrating that, even if their conduct was retaliatory in nature, he would have taken that action even absent such motives. Thus, plaintiff has raised a triable issue of fact whether defendant Weeks was motivated by the filing of the misbehavior report.

Accordingly, in the alternative, should the District Judge determine that this claim is exhausted, it is recommended that the motion for summary judgment be denied on this ground, as plaintiff has pleaded a prima facie case of retaliation regarding the confinement, and in response, defendant Weeks has not met his burden of demonstrating that plaintiff would have received the same treatment even absent retaliatory motive. Mount Healthy, 429 U.S. at 287.

### b. **Verbal Threats**

Nunez claims that Weeks "advised" him not to file any more grievances against the staff at Coxsackie C.F. Verbal harassment or threats are generally not considered adverse action for the purpose of a First Amendment retaliation claim. Marrero v. Kirkpatrick, No. 08-CV-6237, 2012 WL 2685143, at *7 (W.D.N.Y. July 6, 2012) (citing Rosales v. Kikendall, 677 F. Supp. 2d 643, 648 (W.D.N.Y. 2010)) (additional citation omitted). Further, verbal harassment and threats are generally not considered conduct "that would deter a similarly situation individual of ordinary firmness of exercising constitutional rights." Cabassa v. Smith, No. 9:08-CV-0480 (LEK/DEP), 2009 WL 1212495, at *7 (N.D.N.Y. Apr.30, 2009) (citation omitted). Whether verbal threats constitute adverse action "seems to depend on their specificity and the context in which they are uttered." Lunney v. Brureton, No. 04 CIV. 2438, 2007 WL 1544629, at *23 (S.D.N.Y. May 29, 2007) (citations omitted); see also Ford v. Palmer, 539 F. App'x 5, 5 (2d Cir. 2013) (summary order) (finding that a verbal threat constituted adverse action where corrections officer threatened to poison the plaintiff in retaliation for filing his grievances). "[V]ague intimations of some unspecified harm generally will not rise to the level of adverse action for the purpose of a First Amendment retaliation claim." Bumpus v. Canfield, 495 F. Supp. 2d 316, 326 (W.D.N.Y. 2007) (citing, inter alia, Bartley v. Collins, No. 95 Civ. 10616, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (stating that verbal threats such as "we going to get you, you better drop the suit," do not rise to the level of adverse action).

Assuming Nunez engage in protected conduct, Nunez cannot satisfy the second element of a retaliation claim. Weeks' verbal, non-specific threat advising plaintiff to stop filing grievances, however abhorrent, is insufficient to establish adverse action for purposes

of a retaliation claim.  See Johnson v. Brown, No. 9:09-CV-0002 GTS/DEP, 2011 WL 1097864, at *6 (N.D.N.Y. Mar. 22, 2011); see also H'Shaka v. Drown, No. 03-CV-937(LEK/RFT), 2007 WL 1017275, at *14 (N.D.N.Y. Mar. 30, 2007) (holding that the threat to the plaintiff that searches would continue as long as he filed grievances was insufficient to constitute an adverse action); see also Alicea v. Howell, 387 F.Supp.2d 227, 237 (W.D.N.Y. 2005) (finding no adverse action where a prison official told an inmate that he would "have to pay the consequences" for filing a grievance against her).  Accordingly, it is recommended that defendants' motion on this ground be granted.

### 3.  **Cell Search**

Nunez claims that Facteau ordered a cell search in retaliation for Nunez's filing of the December 10, 2010 grievance.  The Supreme Court of the United States has ruled that inmates have no constitutional protection from cell searches, even those conducted for retaliatory reasons.  See Hudson v. Palmer, 468 U.S. 517, 530 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."); see also Walker v. Keyser, No. 98 Civ. 5217, 2001 WL 1160588, at *9 (S.D.N.Y. Oct. 17, 2001) ("Even retaliatory searches are not actionable under § 1983.").

Accordingly, it is recommended that defendants' motion for summary judgment on this ground be granted.

### 4.  **Misbehavior Report**

"In cases involving allegations of retaliation based on the filing of allegedly false

misbehavior reports, "'[t]he difficulty lies in establishing a retaliatory motive.'" <u>Webster v. Fischer</u>, 694 F. Supp. 2d 163, 183 (N.D.N.Y. 2009) <u>aff'd</u>, 398 F. App'x 683 (2d Cir. 2010) (citation omitted). "[A] plaintiff may cite such factors as 'temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives.'" <u>Id</u>. (citations omitted). The fact that a misbehavior report was administratively reversed and expunged supports a plaintiff's allegations that the misbehavior report was false and retaliatory. <u>See</u> <u>Perez v. Fischer</u>, No. 10-CV-518 (LEK/DRH), 2012 WL 1098423, at *16 (N.D.N.Y. Mar. 1, 2012) <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, No. 10-CV-0518 (LEK/DRH), 2012 WL 1088486 (N.D.N.Y. Mar. 30, 2012).

On December 10, 2010, Nunez filed a grievance regarding his television and keyboard. Dkt. No. 62-9 at 3; Dkt. No. 150-2 at 114. On December 23, Lilledahl issued a false misbehavior report. Dkt. No. 150-2 at 127; Dkt. No. 62-11 at 26. Miller found Nunez guilty of the charges in the misbehavior report, and Lacy affirmed the decision. Dkt. No. 150-2 at 134, 145-46. Lilledahl claims that the guilty determination is evidence of his valid, non-retaliatory reason for issuing the misbehavior report. Dkt. No. 105-3 at 19. However, that determination was administratively reversed. Dkt. No. 62-12 at 55. Although Lilledahl's argument is misplaced, the retaliation claim cannot survive defendants' motion for summary judgment as Nunez has failed to establish a prima facie cause of action for retaliation. The December 2010 grievance seeks restitution for personal and legal expenses; compensation for food that Nunez was not permitted to have while at Coxsackie C.F.; and compensation for pain and suffering while locked in a cell for four days at Coxsackie C.F. Dkt. No. 62-9 at 8-9. The grievance neither involves nor mentions either Lilledahl or Facteau.

"While in theory the issuance of a false misbehavior report motivated out of retaliatory

26

animus can support an actionable claim under the First Amendment, in the face of defendants' summary judgment motion plaintiff has failed to offer any evidence to establish a prima facie cause of action for unlawful retaliation." Smith v. Christopher, No. 9:06-CV-1196 (LEK/DEP), 2008 WL 4283519, at *14 (N.D.N.Y. Sept. 16, 2008) (finding that the plaintiff failed to establish any basis to find the existence of the requisite nexus between the plaintiff's protected conduct and the issuance of the misbehavior reports). The evidence does not establish that Lilledahl was aware of the December 10, 2010 grievance at the time he filed the misbehavior report. Further, Nunez has not come forward with any evidence establishing a connection between Lilledahl and the individuals or the incidents addressed in the December 10 grievance. Thus, Nunez has failed to establish that Lilledahl was motivated by retaliatory animus when he filed the misbehavior report. Nunez cannot rely solely upon temporal proximity and circumstantial evidence to defeat a motion for summary judgment. See Woodward v. Ali, No. 9:13-CV-1304 (LEK/RFT), 2015 WL 5711899, at *11 (N.D.N.Y. Sept. 29, 2015) (holding that the plaintiff did not offer any evidence establishing any connection between the defendant and the incident that gave rise to the plaintiff's protected conduct).

As a result, it is recommended that defendants' motion, insofar as it relates to Nunez's retaliation claim based on the misbehavior report, be granted.

### 5. Removal from Honor Housing

Here, Nunez claims that his removal from Honor Housing for fourteen months constitutes an "adverse action," and relies upon the "temporal proximity" between his December 10, 2010 grievance and his removal as evidence of retaliatory intent. Dkt. No.

113 at 9-10.   This District has held that, "[i]t is reasonably possible that other inmates would fail to exercise their constitutional right to file grievances for fear that they would be removed from the honor dormitory." <u>Burke v. Seitz</u>, No. 01-CV-1396 (GLS/DRH), 2006 WL 383513, at *6 (N.D.N.Y. Feb. 13, 2006).   After reviewing the record, the undersigned finds that Nunez has failed to establish a prima facie cause of action for retaliation related to his Honor Housing.

The "causal connection" between the protected conduct and adverse action is tenuous, as the record lacks evidence establishing exactly when Nunez was removed from Honor Housing.   Even assuming Nunez could establish temporal proximity between the grievance and his removal from Honor Housing, the timing, without more, is insufficient to raise a trial issue of fact to defeat a motion for summary judgment. <u>See</u> <u>Davis</u>, 320 F.3d at 354.   Nunez has failed to present evidence establishing that Miller was aware of the December 10, 2010 grievance at the time he was removed from Honor Housing.   Further, the record lacks evidence establishing that Miller was motivated by retaliatory animus when he sentenced Nunez.   Indeed, the only references to Miller in the December 2010 grievance were complimentary.   Nunez indicated that he wrote to Miller on November 26, 2010 asking to be moved back to Honor Housing, and Miller granted his request and transferred Nunez back to the block on December 2, 2010.  Dkt. No. 62-9 at 7 ("I wanted to commend and thank Lt. Miller for moving me back so quickly to honor housing.").   The remaining portions of the grievance do not involve Miller.

From the evidence presented, the undersigned finds that Nunez failed to present any facts establishing that Miller retaliated against Nunez when he removed Nunez from the honor block following the hearing. <u>See</u> <u>Carlson v. Parry</u>, No. 06-CV-6621, 2012 WL

1067866, at *9 (W.D.N.Y. Mar. 29, 2012) (concluding that the plaintiff failed to offer any evidence that the defendant was motivated by his Notice of Intent to sue that did not involve the defendant and related to an incident that occurred at a different facility).

Accordingly, it is recommended that defendants' motion for summary judgment on this ground be granted.

### 6. **Donahue**

On December 21, 2010, Nunez filed a property claim against Donahue related to the personal property he sent home upon transfer to Coxsackie C.F., specifically his television and keyboard. Dkt. No. 150-2 at 117-118. Nunez alleges that his cell was searched as a result of filing that claim. Dkt. No. 113 at 18; Dkt. No. 62 at 53. As discussed, Nunez cannot maintain a cause of action for retaliation arising from a cell search. Hudson, 468 U.S. at 530.

Insofar as Nunez implies that Donahue was involved in any other retaliatory acts, defendants argue that Nunez has named Donahue as a defendant only because she denied the property claim, and that Nunez cannot prove Donahue's personal involvement in the cell search or any retaliatory act that allegedly occurred after Nunez returned to Clinton C.F. Dkt. No. 105-3 at 14, 17. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).

Nunez testified that, "[b]ecause she [Donahue] received the - - my property claim on December 23rd. She probably didn't like me at all already, because I was already sent back

29

from Coxsackie back over here." Dkt. No. 105-2 at 120. Indeed, Nunez testified that he did not know if Donahue was even aware of the December 10, 2010 grievance, but merely alleges, "as part of the investigation, she should have been [aware]." Id. at 124. Nunez asserted that, other than denying his property claim, "he did not know what else she did or did not do." Id. at 125. It is fair to conclude that a rational factfinder would determine that Nunez's allegations are speculative, and, therefore, he cannot establish that Donahue was personally involved in any alleged unconstitutional violations that occurred upon his return to Clinton C.F.

Accordingly, it is recommended that defendants' motion on this ground be granted.


### D. **Due Process**

Nunez claims that Miller violated the Fourteenth Amendment by placing him in keeplock for fifteen days which resulted in a fourteen-month loss of Honor Housing without due process. Dkt. No. 113 at 10. In determining whether the fifteen-day keeplock confinement and subsequent fourteen-month loss of Honor Housing violated Nunez's due process rights, the court must consider: "'(1) whether the plaintiff had a protected liberty interest in not being confined . . . and, if so; (2) whether the deprivation of that liberty interest occurred without due process of law.'" Tellier v. Fields, 280 F.3d 69, 79-80 (2d Cir. 2000) (quoting Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997)).


### 1. **Liberty Interest**

An inmate has a protected liberty interest in being free from segregated confinement if

he can make a threshold showing that the deprivation of which he complains imposed the requisite atypical and significant hardship. See Sandin v. Connor, 515 U.S. 472, 483-84 (1995); Tellier, 280 F.3d at 80 (quoting Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996)). Among the factors to be considered in determining whether confinement is atypical include, "(1) the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement." Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir. 1998) (citing Sandin, 515 U.S. at 484). Although not dispositive, the duration of a disciplinary confinement is a significant factor in determining atypicality. Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000) (citations omitted). No firmly established, bright-line rule exists to determine the length or type of sanction that rises to the level of atypical and significant hardship. Wilkinson v. Austin, 545 U.S. 209, 223 (2005) (citations omitted).

Addressing the conditions of confinement, Nunez served his entire fifteen-day keeplock sentence. Dkt. No. 105-2 at 138. However, Sandin requires the Court to consider not just the length of confinement, but also the conditions of the confinement in comparison to the conditions faced by inmates in other types of confinement. Sandin, 515 U.S. at 483-84. Nunez contends that he was denied access to programming and was not permitted to work, but concedes that he was offered one-hour of recreation – and chose not to leave his cell – and admits that he was not denied sick call in keeplock. Dkt. No. 150-2 at 137-39; cf. Cody v. Jones, 895 F.Supp. 431, 441 (N.D.N.Y. 1995) (holding that, although the plaintiff did not always receive his hour of exercise, two out-of-cell meals per day, and three hours out-of-cell per day, "when the whole picture is examined, the court cannot find that his

31

conditions of confinement during that time 'present a dramatic departure from the basic conditions' of his sentence.") (citing <u>Sandin</u>, 515 U.S. at 485); <u>see</u> <u>also</u> <u>Arce v. Walker</u>, 139 F.3d 329, 335 (2d Cir. 1998) (holding that, although the conditions were more restrictive than for inmates in general population, the conditions of an inmate's eighteen-day administrative segregation did not invoke a liberty interest where the inmate argued that the atypical conditions he faced included denial of exercise and access to communal meals and communal religious services). Although the conditions of keeplock confinement Nunez faced may have been less than ideal and allowed him lesser benefits than those available in honor housing, Nunez has not demonstrated that he was subject to conditions that were so atypical when compared to the conditions of life in the inmate population as to give rise to a protected liberty interest.

Nunez also argues that he had a protected liberty interest in honor housing; thus, his fourteen-month loss of Honor Housing was a constitutional violation. The Supreme Court has held that a prisoner does not have a constitutionally- derived liberty interest in assignment to a particular part of a prison. <u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976). Moreover, it has also been held that there is no protected liberty interest in Honor Block housing. <u>Van Pelt v. Finn</u>, No. 92 Civ. 2977, 1993 WL 465297, at *6 (S.D.N.Y. Nov. 12, 1993) (citing <u>Joyner v. Coughlin</u>, 180 A.D.2d 797, 798 (2d Dep't 1992)). However, even if inmates had a liberty interest in honor housing, "it is clear that the mere denial of the extra privileges associated with Honor Block does not impose an 'atypical and significant' hardship . . . ." <u>Shariff v. Artuz</u>, 99 CIV. 9321 (DC), 2000 WL 1219381, at *6 (S.D.N.Y. Aug. 28, 2000) (citing <u>Lee v. Governor of New York</u>, 87 F.3d 55, 58-59 (2d Cir. 1986). Thus, Nunez has failed to demonstrate that he had a protected liberty interest in Honor Housing.

## 2. **Procedural Due Process**

Nunez alleges that his procedural due process rights were violated during the December 27, 2010 disciplinary hearing arising out of the December 23, 2010 misbehavior report charging Nunez with unauthorized exchange and possessing contraband and stolen property.

The due process protections afforded a prison inmate do not equate to "'the full panoply of rights' due to a defendant in a criminal prosecution." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (quotation omitted). "Nevertheless, an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." Id. (citing Wolff v. McDonnell, 418 U.S. 556, 563-67 (1974)).

"It is well settled that an official may refuse to call witnesses as long as the refusal is justifiable [such as] . . . on the basis of irrelevance or lack of necessity." Scott v. Kelly, 962 F.2d 145, 146-47 (2d Cir. 1992) (internal quotations and citations omitted); see also Richardson v. Van Dusen, 833 F.Supp. 146, 152 (N.D.N.Y. 1993). An inmate is entitled to some explanation of the basis for a hearing officer's denial of the inmate's request for certain witnesses or items of evidence. See Loret v. Selsky, 595 F. Supp. 2d 231, 234 (W.D.N.Y. 2009).

Even assuming Nunez had a protected liberty interest at stake, Nunez has failed to establish that he was denied due process protections. Nunez summarily states that Miller would not allow him to introduce evidence or call witnesses, including Facteau and Lacy. Dkt. No. 105-2 at 137. Miller provided Nunez with a Witness Interview Notice that denied

33

his request to call Facteau and Lacy noting that the witnesses were, "not present during cell frisk and could not provide relevant testimony." Dkt. No. 62-10 at 28. Nunez does not explain why Facteau's or Lacy's testimony was relevant and the record is void of any description of what evidence was barred from the hearing. Moreover, Nunez has failed to explain why or how the exclusion of this evidence or witness testimony impacted the outcome of the hearing. See Hinton v. Prack, No. 9:12-CV-1844 (LEK/RFT), 2014 WL 4627120, at *2 (N.D.N.Y. Sept. 11, 2014) (citing Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006) ("[A] prisoner cannot maintain a due process claim for failure to permit witness testimony if he fails to show that the testimony would have affected the outcome of his case.")). Further, the record lacks evidence that Nunez was prejudiced as a result of any procedural error, and does not show that he was unable to present a defense without these witnesses' testimony. See, e.g, Clark v. Dannheim, 590 F.Supp.2d 426, 429-31 (W.D.N.Y. 2008) ("To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing.") (citation omitted)).

Accordingly, as the undersigned determines that Nunez was afforded all the procedural process he was due, it is recommended that defendants' motion for summary judgment be granted on this ground.

### E. **Supervisory Liability**

Nunez claims that Bellamy, Lacy, LaValley, Patnode, and Proulx failed to remedy all constitutional violations. Dkt. No. 113 at 11. As discussed supra, personal involvement is prerequisite to an award of damages under § 1983. Thus, supervisory officials may not be

held liable merely because they held a position of authority.  <u>Black v. Coughlin</u>, 76 F.3d 72,

74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally

involved" if:

> (1) [T]he defendant participated directly in the alleged
> constitutional violation;
> (2) the defendant, after being informed of the violation
> through a report or appeal, failed to remedy the wrong;
> (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the
> continuance of such a policy or custom;
> (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts; or
> (5) the defendant exhibited deliberate indifference to the
> rights of inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

<u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995) (citing <u>Williams v. Smith</u>, 781 F.2d 319,

323-24 (2d Cir. 1986)).


### a. **Bellamy**

Nunez claims that Bellamy was aware of the constitutional violations because she

forwarded the CORC decisions and because she failed to remedy the "continuing

violations" despite being aware of the violations.  Dkt. No. 150-2 at 152.  Nunez has failed

to present evidence that Bellamy was personally involved in any violation of Nunez's

constitutional rights.  Merely alleging that Bellamy executed the CORC determinations

which affirmed the decisions of other defendants is insufficient to defeat a motion for

summary judgment.  <u>Persad v. Savage</u>, No. 02-CV-336S, 2004 WL 1570286, at *7

(W.D.N.Y. May 25, 2004) (finding that the plaintiff's allegations insufficient where the

plaintiff alleged, without more, that Bellamy was personally involved because her signature

35

was on the official record of the CORC decision); see also Williams v. Fischer, No. 11-CV-379 (NAM/TWD), 2015 WL 1137644, at *20 (N.D.N.Y.  March 11, 2015) (finding lack of personal involvement where the plaintiff's allegations against Bellamy dealt with grievances appealed to, and decided by, CORC, without any evidence that Bellamy had personal involvement in the investigation, review or determination of any of the plaintiff's appeals). Because Nunez has failed to demonstrate Bellamy's involvement beyond forwarding the CORC decisions, he has failed to establish personal involvement on her part.

Accordingly, it is recommended that defendants' motion for summary judgment on this issue be granted.


b. **Lacy**

Nunez's claims against Lacy arise out of Miller's disciplinary hearing determination. Nunez claims that Lacy was aware of the due process violations and failed to remedy those violations.  Dkt. No. 150-2 at 154.  Absent an underlying constitutional violation by a subordinate, there can be no supervisory liability.  Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003).   As discussed supra, Nunez failed to raise an issue of material fact with respect to his due process claims.  Accordingly, as the undersigned found no underlying constitutional violation, the undersigned recommends that defendants' motion for summary judgment dismissing supervisory liability claims against Lacy be granted.


c. **LaValley, Patnode, and Proulx**

i. **LaValley**

36

Nunez claims that LaValley did not respond to any of his letters and/or grievances, but is personally involved because he forwarded his letters to other individuals. Dkt. No. 150-2 at 151-52. Nunez also contends that Patnode and Proulx were personally involved because they denied Nunez's May and December 2010 grievances. Dkt. Nos. 113 at 11, Dkt. No. 150-2 at 153.

Nunez wrote at least three letters to LaValley involving an appeal of his May 2010 grievance which related to his alleged denial of access to the courts and a request for a transfer to Honor Housing. Dkt. No. 62-13. With respect to his request to transfer, LaValley did not respond to Nunez's letters. Instead, LaValley forwarded Nunez's requests to Miller. Id.; Dkt. No. 150-2 at 152. Based upon the record, the undersigned finds that Nunez has failed to establish that any of the aforementioned defendants were personally involved in any constitutional violation to avoid summary judgment. The mere receipt of grievances or forwarding grievances to others for response does not sufficiently establish personal involvement in order to overcome a motion for summary judgment. See Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997); see also Goris v. Breslin, 402 F. App'x 582, 584 (2d Cir. 2010).

ii. **Patnode and Prolux**

With respect to Patnode and Proulx, Nunez claims that they were personally involved based solely on the fact that they denied his grievances. Dkt. No. 150-2 at 154. Without more, affirming or denying a grievance is insufficient to show personal involvement for purposes of liability under § 1983. See Keitt v. Schun, No. 11-CV-438, 2014 WL 347053, at

*8, (W.D.N.Y. Jan. 30, 2014) (holding that merely affirming denial of a plaintiff's grievance is insufficient to establish personal involvement under § 1983). Moreover, having failed to establish any underlying constitutional violations, Nunez has not demonstrated a claim for "failure to remedy" against the aforementioned defendants. See Elek v. Inc. Vill. of Monroe, 815 F .Supp. 2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the proposition that "because plaintiff has not established any underlying constitutional violation, she cannot state a claim for 1983 supervisory liability").

Accordingly, the undersigned recommends that defendants' motion for summary judgment and dismissal of Nunez's supervisory liability claims against LaValley, Patnode, and Proulx be granted.


F. **Conspiracy**[8]

Nunez claims that Donahue, Lacy, Facteau, Lilledahl, and Miller conspired to deprive him of his constitutional rights when they retaliated against him, resulting in Nunez's removal from Honor Housing. See Dkt. No. 62 at 52-53. To support a claim for conspiracy pursuant to § 1983, there must be "(1) an agreement . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002). An agreement must be proven with specificity, as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action is insufficient. See Iqbal

---

[8] Defendants also assert that any conspiracy claims are effectively barred by the intracorporate conspiracy doctrine. However, because it is recommended herein that defendants' motions as to the conspiracy claim be granted on other grounds, their argument based on the intracorporate conspiracy doctrine need not be addressed.

38

v. Hasty, 490 F.3d 143,177 (2d Cir. 2007); see also Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999). Conclusory, vague, and general allegations are insufficient to support a conspiracy claim. Ciambriello, 292 F.3d at 325.

Here, Nunez fails to provide evidence sufficient to support a viable conspiracy claim against any of these defendants. There is nothing in the record to establish that defendants had any type of agreement between them. There were no allegations outlining with specificity when, why, or how an alleged conspiracy occurred or the existence of an explicit or implicit agreement between any or all of the defendants. Nunez fails to adduce record evidence establishing either: "(1) a meeting of the minds between any of the defendants to act in concert to inflict a constitutional injury on Nunez; or (2) the commission of any overt act in furtherance of that goal." See Cusamano v. Sobek, 604 F. Supp. 2d 416, 432 (N.D.N.Y. 2009).

Accordingly, as Nunez's conclusory and unsupported claims are insufficient to state a conspiracy claim, it is recommended that defendants' motion on this ground be granted.


### G. **State Law Claims**

Nunez claims that defendants violated the New York State Constitution, Article I, §§ 1, 5, 6, 8, 9, 11, 12; New York Corrections Law §§ 137(5), 138(4), 139; 7 NYCRR §§ 250.2(f), 253.1(b), 253.5(a), 253.6(c) and DOCCS Directives 4421 and 4932. See Dkt. No. 62 at 36, 40, 43-44, 49, 51, 54, 61-62. Defendants move for summary judgment dismissing Nunez's state law claims, arguing that the claims are precluded pursuant to New York Corrections Law § 24. Dkt. No. 105-3 at 21. Nunez counters that state law immunity does not extend to the retaliation claims because defendants acted outside the scope of their duties. Dkt. No.

113 at 13.

The undersigned recommends dismissal of Nunez's state law claims in light of the recommendations of dismissal of all federal causes of action in Nunez's amended complaint.  See 28 U.S.C. § 1367(c)(3) (the district court may decline to exercise supplemental jurisdiction over a claim if all other claims over which the court has original jurisdiction have been dismissed); City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 172 (1997); Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994).  However, even if the underlying federal causes of action survive summary judgment, New York Correction Law § 24(1) controls.  The section provides:

> No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

See Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir. 1996) (citing N.Y. CORRECTION LAW § 24(1)).

Courts look at the following factors to determine whether a defendants' action is within the scope of employment:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in the actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could have reasonably anticipated.

Ierardi v. Sisco, 119 F.3d 183, 187 (2d Cir. 1997) (quotations and citations omitted) (holding that the defendant's alleged sexual harassment was not undertaken in the discharge of his duties and beyond the protection afforded to officers under § 24).

40

To determine whether the defendants' actions fall within the scope of their employment, courts assess "whether the act was done while the servant was doing his master's work no matter how irregularly, or with what disregard of the instructions." Cruz v. New York, 24 F. Supp. 3d 299, 309 (W.D.N.Y. 2014) (citing Cepeda v. Coughlin, 128 A.D.2d 995, 996 (3d Dep't 1987)). Conduct that is "purely for personal reasons unrelated to the employer's interests, . . . which is a substantial departure from the normal methods of performing the officer's duties is not considered within the scope of employment." Johnson v. New York State Dep't of Corr. Servs. & Cmty. Supervision, No. 11-CV-079S, 2013 WL 5347468 (W.D.N.Y. Sept. 23, 2013) (quoting Gore v. Kuhlman, 217 A.D.2d 890, 891 (3d Dep't 1995)).

Nunez vaguely alleges that defendants acted outside the scope of their duties when they retaliated against Nunez and denied him access to the courts. Dkt. No. 113 at 13. Based upon the record herein, the defendants were on duty in the correctional facility/facilities and were performing their "basic job function(s)" at the time of the alleged retaliatory conduct. "The actions of writing misbehavior reports and controlling the movements of prisoners fall squarely within . . . [the] responsibilities of 'maintaining order and security in correctional facilities . . .'" Ames v. New York Dep't of Corr. and Community Supervision, No. 12-CV-1487 (MAD/RFT), 2015 WL 4126326, at *14 (N.D.N.Y. March 24, 2015) (citations omitted). The alleged retaliatory acts were not significant departures beyond the scope of defendants' employment. Cf. Livingston v. Griffin, No. 04-CV-0607, 2007 WL 2437433, at *3 (Aug. 22, 2007) (denying the defendants' motion for summary judgment as to the issue of whether the defendants' deliberate and intentional service of food "adulterated with drugs" fell within the parameters of § 24 as such conduct, if true,

would be clearly outside the scope of the defendants' employment).

Accordingly, the undersigned recommends that defendants' motion for summary judgment on this ground be granted.

## III. **CONCLUSION**

**WHEREFORE**, based on the findings set forth above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 105) be **GRANTED;** and it is further

**RECOMMENDED** that, in the alternative, should the District Judge find that plaintiff Manuel Nunez exhausted his administrative remedies as to his retaliation claim against defendant Weeks: (1) the retaliation claim proceed because, should the matter be exhausted, plaintiff has presented a material question of fact whether defendant Weeks retaliated against him for the exercise of his Constitutional rights, and (2) all other claims be dismissed as set forth above; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1( c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d

15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED.**


Dated: November 23, 2015
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge