**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MANUEL NUNEZ,

                                   **Plaintiff,**

v.

                                                                      **9:12-CV-1071 (BKS/CFH)**

**D. DONAHUE,** *Head Account Clerk; Clinton*
*Correctional Facility, et al.,*

                                   **Defendants.**
_____

**Appearances:**

**Manuel Nunez**
97-A-0205
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562
Plaintiff, pro se

**Christopher W. Hall, AAG**
Hon. Eric T. Schneiderman
Office of New York State Attorney General
The Capitol
Albany, NY 12224
Attorney for Defendants

**Hon. Brenda K. Sannes, U.S. District Judge**

**MEMORANDUM-DECISION AND ORDER**

**I.  Introduction**

        Plaintiff pro se Manuel Nunez brought this action under 42 U.S.C. § 1983 alleging that

the defendants violated his federal and state constitutional rights while he was incarcerated at

Clinton Correctional Facility (Clinton C.F.) and Coxsackie Correctional Facility (Coxsackie C.F.). Dkt. No. 62. On July 10, 2015, defendants filed a motion for summary judgment. Dkt. No. 105. Plaintiff filed his opposition to the motion on August 3, 2015. Dkt. No. 113. Defendants' motion was referred to United States Magistrate Judge Christian F. Hummel who, on November 23, 2015, issued a Report-Recommendation and Order recommending that defendants' motion for summary judgment be granted. Dkt. No. 117. Magistrate Judge Hummel recommended that, in the alternative, if the District Judge concluded that plaintiff exhausted his administrative remedies as to his retaliation claim against defendant Weeks, the retaliation claim should proceed because plaintiff raised a material question of fact whether defendant Weeks retaliated against him for the exercise of his Constitutional rights, and that all other claims should be dismissed. *Id.*, at p. 42.

Plaintiff filed an objection to the Report-Recommendation raising various specific objections and then requesting a *de novo* review of the parts of the Report-Recommendation to which he had not specifically objected because he objects to "each and every part[]." Dkt. No. 119, p. 14. Plaintiff also sought appointment of counsel. *See* Dkt. No. 119, p. 14 (seeking appointment of "counsel for a just determination of this case and allow the assign [sic] counsel ample time to review the case and engage in discovery"). Defendants have not responded to Plaintiff's filing, nor have they objected to the Report-Recommendation. For the reasons set forth below, the alternative recommendation in the Report-Recommendation is adopted in its entirety.

## II. Background

The Court presumes the parties' familiarity with plaintiff's factual allegations which are

thoroughly set forth in the Report-Recommendation. Dkt. No. 117, pp. 4-9.[1] Essentially, plaintiff claims that defendants Donahue and Palmer denied him access to the court when they intentionally lost and/or destroyed an envelope he had addressed to the New York Court of Claims that contained a disbursement request for a $50 court filing fee, which delayed the payment of the filing fee for plaintiff's Court of Claims action, and caused it to be dismissed. Dkt. No. 62, pp. 7-13, 33-36.[2] Plaintiff alleges that defendants Donahue, Lapoint-Kelsh, Koktowski, Garman and Patnode conspired to transfer him from Clinton C.F. to Coxsackie C.F. in retaliation for filing a grievance regarding access to the court. Dkt. No. 62, pp. 36-41. Plaintiff alleges that after he arrived at Coxsackie, and had filed a grievance regarding the retaliatory transfer and conditions at Coxsackie, defendant Weeks interviewed plaintiff regarding the grievance. Dkt. No. 62, p. 18-19, 42. Plaintiff alleges that defendant Weeks advised plaintiff not to write any more grievances and then retaliated against plaintiff by confining him to a cell in the reception area for four days, without recreation time, awaiting his return to Clinton C.F. Dkt. No. 62, pp. 18-20, 41-43.

Plaintiff further alleges that upon his return to Clinton C.F., and following his grievance seeking restitution for the transfer, defendants Lacy, Donahue, Kelsh, Facteau, Lilledahl and Miller conspired to retaliate against him for filing a grievance by searching his cell, filing a false misbehavior report and removing him from honor housing. Dkt. No. 62, pp. 44-49, 52-55. Plaintiff alleges that defendant Miller violated his due process rights by depriving him of a fair

---

[1] Plaintiff's objections to the facts in the Report-Recommendation are addressed below.

[2] In the Court of Claims action plaintiff sought to recover monies for a radio/cassette player and other items left in his work space in the tailor shop which had been disposed of during a lockdown at Clinton C.F. *Id.*

hearing on the false misbehavior report. Dkt. No. 49-51. Finally, Plaintiff alleges supervisory liability claims against defendants Bellamy, Lacy, LaValley, Patnode and Proulx for failure to remedy the alleged constitutional violations. Dkt. No. 62, pp. 55-62.

## III. Standard of Review

The Court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.* Properly raised objections must be "clearly aimed at particular findings" in the Report. *Vlad-Berindan v. MTA N.Y.C. Transit*, No. 14 Civ. 675 (RJS), 2014 WL 6982929, at *1, 2014 U.S. Dist. LEXIS 170985, at *3 (S.D.N.Y. Dec. 9, 2014);[3] *Petersen*, 2 F. Supp. 3d at 228. When a party files "merely perfunctory responses," attempting to "engage the district court in a rehashing of the same arguments set forth in the original petition," the report will be reviewed for clear error only. *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006). The Court accordingly rejects plaintiff's request for *de novo* review of those aspects of the Report-Recommendation for which plaintiff failed to preserve a proper objection.

## IV. Discussion

### A. Factual Objections

The Court has reviewed all of plaintiff's specific factual objections *de novo*. Based upon the evidence in the record, the Court credits the following objections and finds as follows. The lost or destroyed envelope which Plaintiff gave to defendant Palmer was, as Plaintiff asserts,

---

[3] This unpublished decision is attached.

addressed to the Court of Claims, not the business office at Clinton C.F. (The envelope had to go to the business office before mailing, for the insertion of a $50 check for the court filing fee.) *See* Dkt. No. 119, p. 2; Dkt. No. 117, p. 5. Plaintiff correctly notes that upon his return to Clinton C.F., he did not *receive* payment for his television or for pain, he *sought* payment for the television and for pain. *See* Dkt. No. 117, p. 8; Dkt. No. 119, p. 3; Dkt. No. 105-2, p. 102-03; Dkt. No. 62-9, p. 33, 43.

The Court rejects Plaintiff's factual objections as follows. The Transfer Review Form signed by defendants Julie Lapoint-Kelsh and K. Koktowski expressly states that Plaintiff's "preference is to remain at Clinton." Dkt No. 62-6; *see* Dkt. No. 117, p. 6; Dkt. No. 119, p. 2. The property claim filed by Plaintiff on December 21, 2010 (Claim No. 020-0210-10) expressly states that defendant Donahue disapproved it on the grounds that "staff followed proper procedures while packing claimants['] property for transfer to Coxsackie. C.F." Dkt. No. 62-10, p. 5; *See* Dkt. No. 117, p. 9; Dkt, No., 119, p. 4.

After considering the remainder of Plaintiff's factual objections, the Court has found them to be factually unsupported and/or irrelevant to the legal issues before the Court. With the minor exceptions set forth above, the Court therefore adopts and incorporates into this decision the thorough recitation of facts set forth in the Report-Recommendation.

**B. Failure to Exhaust Administrative Remedies**

In the motion for summary judgment defendant Weeks argued that plaintiff failed to exhaust his administrative remedies for his claim that defendant Weeks placed plaintiff in keep lock for four days, without recreation time, in retaliation for plaintiff's filing of a grievance. Dkt. No. 105-3, p. 11. Defendant Weeks argued that plaintiff had failed to exhaust this claim because

plaintiff "admitted [during his deposition] he failed to file a grievance that concerned Lt. Week's putting him in the cell." Dkt. No. 105-3, p. 11. Defendant Weeks also argued that "to the extent he may have earlier raised a complaint about Lt. Weeks in his grievance, plaintiff abandoned it in his CORC appeal." *Id.* at p. 12.

After reviewing the grievance, and plaintiff's deposition testimony regarding that grievance, Magistrate Judge Hummel concluded that plaintiff failed to exhaust his administrative remedies regarding his retaliatory keep lock claim. Dkt. No. 117, p. 21. Magistrate Judge Hummel noted that the grievance did not identify the person responsible for the four-day confinement and "[n]othing in the grievance could reasonably have led prison authorities to conclude that [plaintiff] was making an allegation against Weeks for retaliation related to his four-day confinement in the reception area pending transfer." *Id.* In the alternative, Magistrate Judge Hummel recommended that if the Court concluded that plaintiff did exhaust this claim, the claim should proceed because plaintiff has raised a material issue of fact with respect to whether his confinement was retaliatory. *Id.* at 21-23.

Plaintiff objects to the recommended conclusion that he failed to exhaust administrative remedies. Dkt. No. 119, p. 6. Plaintiff argues that his December 2010 grievance "placed NYSDOCCS on notice and gave specific dates and named Lt. Weeks. [sic] The only person responsible for placing the Plaintiff in the reception area and kept locked in a cell without recreation (24 hours a day)." *Id.* Plaintiff notes that Weeks was the "only person with the motive," after having threatened Plaintiff. *Id.* In light of the liberal standard for grievance pleading, the Court finds that plaintiff exhausted his administrative remedies regarding his claim of retaliation by defendant Weeks.

## 1. Facts

The grievance which referenced defendant Weeks is plaintiff's December 10, 2010 grievance (CL-60526-10). In that grievance plaintiff sought restitution for the allegedly retaliatory transfer to Coxsackie. *See* Dkt. No. 62-9, p. 3 (grievance captioned "to seek restitution for a transfer"). Plaintiff sought expenses he had incurred as a result of the transfer, for mailing home personal property that was not permitted at Coxsackie C.F., as well as damages for having been confined in keep lock for four days, pending transfer back to Clinton C.F., without a daily one-hour recreation. *Id.* at p. 5, 9. In his grievance plaintiff described his interview by Lt. Weeks and subsequent keep lock at Coxsackie as follows. Plaintiff stated that on November 10, 2010, Lt. Weeks interviewed him about a November grievance plaintiff had filed while at Coxsackie; advised plaintiff not to file any more grievances; and that the interview and advice were "nothing but intimidation tactics."[4] Dkt. No. 62-9, p. 5. Plaintiff stated that two days after this interview he "was moved to the reception division" and "kept locked in a cell" for four days "without at least a daily one hour recreation supposedly because I was 'pending transfer,' which made no sense to me because even S.H.U. prisoners are allow [sic] one hour of recreation per day." *Id.* In the "action requested" conclusion of his December grievance,

---

[4] In his November 2010 grievance (CX-16173-010), plaintiff complained about Clinton C.F.'s allegedly retaliatory transfer as well as the conditions at Coxsackie. Dkt. No. 62-8, p. 3. Plaintiff stated that the Coxsackie officials wrote "creating a disturbance" misbehavior reports against inmates who spoke in their cell in a normal tone of voice; that officials knowingly permitted the yard telephones to be controlled by gangs; and that several prisoners told Plaintiff that inmates who write grievances are sent to "the box," based on false misbehavior reports, or are assaulted by staff. *Id.* at pp 5-7. Plaintiff sought to be transferred back to Clinton C.F. and also asked "[t]hat Coxsackie Corr. Fac. Administration tell their staffs to stop their intimidation tactics and stop retaliating against prisoners for speaking up on any wrong that they witness or are a victim of." *Id.,* at pp. 8-9.

plaintiff sought, *inter alia*, compensation for humiliation, degradation and pain "suffered on my wrists and ankles [from shackles used during the transfer] and the four days I spend [sic] locked in a cell at Coxsackie C.F. 'pending transfer.'" *Id.* at p. 9. Plaintiff did not identify defendant Weeks as the person who caused plaintiff to be keep locked. *Id.*, at p. 5.[5]

The Inmate Grievance Resolution Committee (IGRC) and the Superintendent responded to the December grievance, addressing plaintiff's claim for monetary restitution as a result of the transfer, without otherwise addressing the allegation regarding keep lock at Coxsackie C.F. Dkt. No. 62-9, pp. 31-32; *see* Dkt. No. 62-9, p. 31 (IGRC advising plaintiff "that the inmate grievance program is not the appropriate mechanism to utilize to obtain monetary restitution"). After the Superintendent found no evidence to substantiate plaintiff's claim that the transfer to Coxsackie was retaliatory and denied his "action for payment of pain," plaintiff appealed to the Central Office Review Committee (CORC). Dkt. No. 62-9, p. 35. While plaintiff did not raise the issue of retaliatory keep lock in his appeal, plaintiff did argue that "the Superintendent's response doesn't even addressed [sic] all the other issues or actions requested by grievant." Dkt. No. 62-9, p. 36. CORC upheld the Superintendent's decision on the grievance, concluding that plaintiff was transferred to Coxsackie in error, not for retaliatory reasons, that plaintiff was not entitled to reimbursement for property he had to mail home and that "money damages are not an available

_____

[5] When the question of Weeks' involvement was raised during plaintiff's deposition, plaintiff testified that Lt. Weeks "had me moved to the reception area and kept me locked in a cell for several days without recreation." Dkt. No. 105-2, p. 84. When he was asked how he knew that it was Lt. Weeks, plaintiff initially said that Lt. Weeks "most likely approved it," but that plaintiff "don't have any paperwork, didn't grieve that." *Id.* When plaintiff was then asked whether Lt. Weeks said that he was going to have plaintiff moved to the reception area, plaintiff testified, "Yes. . . . He said you're going to be transferred to Clinton Correctional Facility soon -- . . . because your transfer's been approved, and I will have you put in the reception area." *Id.* at pp. 84-85.

remote through the inmate grievance program."  Dkt. No. 62-9, p. 43.

## 2. Analysis

As Magistrate Judge Hummel noted in his Report-Recommendation, to exhaust his claims plaintiff was required to provide "a specific description of the problem."  Dkt. No. 117, p. 19; *Espinal v. Goord*, 558 F.3d 119, 127 (2d Cir. 2009).  While a plaintiff is not required to identify the person responsible for the alleged misconduct, he has to "provide enough information about the conduct . . . to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004); *see Espinal*, 558 F.3d at 127.  The Second Circuit has analogized the test for the sufficiency of an administrative grievance to that for notice pleading, explaining that: "as in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief.  All the grievance need do is object intelligibly to some asserted shortcoming." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)) (internal marks and quotations omitted).  While "a liberal grievance pleading standard" applies to pro se inmates, "the grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally." *Brownell*, 446 F.3d at 310.

Here, plaintiff complained about being in keep lock for four days, without any time out for recreation, after Lt. Weeks intimidated him about a grievance that he had filed.  Plaintiff, however, did not specifically allege that defendant Weeks was the person responsible for putting him in keep lock or that his keep lock was in retaliation for having filed a grievance; the grievance sought, and was interpreted by prison officials, as a claim for monetary restitution; and plaintiff testified in this action that he did not grieve defendant Weeks' retaliatory keep lock.

Although it is a close question, given the liberal pleading standard applicable to pro se grievances, the Court finds that plaintiff's grievance was sufficient to exhaust his retaliation claim against defendant Weeks because it was sufficient to alert prison officials to his claim of retaliatory keep lock. The grievance described the specific dates and location of the incident, and plaintiff sought damages for having been in keep lock. Although plaintiff did not allege that his keep lock was retaliatory, the facts alleged in the grievance, when fairly read, suggest that the keep lock was retaliatory. Plaintiff's allegations that Lt. Weeks engaged in "intimidation tactics" regarding plaintiff's grievance, that plaintiff was moved to keep lock two days later, and that four days of keep lock without recreation "supposedly because I was 'pending transfer' . . . made no sense . . . because even S.H.U. prisoners are allow [sic] one hour of recreation" suggest that the placement in keep lock was retaliatory. Dkt No. 62-9, p. 5. *See, e.g.*, *Varela v. Damon*, 491 F.Supp. 2d 442, 448 (S.D.N.Y. 2007) (finding grievance sufficient to exhaust retaliation claim when it did "not use word 'retaliation' . . . but fairly read . . . does suggest that the assault occurred in response" to the plaintiff's complaint); *c.f. Brownell*, 446 F.3d at 311 (grievance seeking damages for property lost during the plaintiff's transfer between institutions, which did not contain any allegations of misconduct by corrections officers, and was treated "merely as a request for lost property" was insufficient to exhaust the plaintiff's claim that officials intentionally lost legal documents, denying his access to courts).

**C. Other Objections**

 After reviewing plaintiff's remaining objections to the legal analysis in the Report-Recommendations *de novo*, the Court rejects plaintiff's objections. With respect to the allegedly retaliatory misbehavior report by defendant Lilledahl, plaintiff has failed to come forward with

any evidence of retaliatory animus by defendant Lilledahl.  *See* Dkt. No. 117, pp. 26-27; Dkt. No. 119, pp. 6-7.  Plaintiff has similarly failed to come forward with any evidence of retaliatory animus by defendant Miller.  *See* Dkt. No. 117, p. 28; Dkt. No. 119, pp. 8-9.  The hearing conducted by defendant Miller does not, as plaintiff asserts, demonstrate his retaliatory animus. *See*. Dkt. No. 62-11, p. 41.  Lt. Miller found plaintiff guilty of only one of the three charges against him – possession of the contraband television.  *Id.* at pp. 42, 46.  While plaintiff did, during the disciplinary hearing, tell Lt. Miller that plaintiff "wrote a grievance" on December 14 "because they transferred me out of a [sic] to Coxsackie Correctional Facility because I was going to file a lawsuit over here and then they transfer me back . . . over here,"  Dkt. No. 62-11, p. 44, Lt. Miller responded that this had "nothing to do with the t.v. that was found in your cell." The evidence, even when viewed in the light most favorable to plaintiff, indicates that during the hearing Lt. Miller was focused on the television found in plaintiff's cell and whether plaintiff had witnesses who could provide evidence regarding that charge.  *Id.* at pp. 43-46.  The Court rejects plaintiff's arguments regarding his removal from honor housing by Lt. Miller for the reasons stated in the Report-Recommendation.  Dkt. No. 119, pp. 8-9; Dkt. No. 117, pp. 27-29.

With respect to defendant Donahue, plaintiff is correct that his December 10, 2010 grievance, appears to have been attached to the December 21, 2010 inmate claim received by Donahue, and that the December 10, 2010 grievance mentions the November 2010 grievance.  Dkt. No. 119, p. 9; *see* Dkt Nos. 62-10, 62-9.  However, as Magistrate Judge Hummel noted in the Report-Recommendation, plaintiff has failed to come forward with evidence that Donahue was personally involved in any of the allegedly unconstitutional acts.  Dkt. No. 117, pp. 29-30. Finally, the Court rejects plaintiff's arguments regarding the alleged denial of due process,

supervisory liability and the state law claims for the reasons stated in the Report-Recommendation. Dkt. No. 119, p. 9-14; Dkt No. 30-43.

WHEREFORE, for the foregoing reasons, it is hereby

ORDERED that Magistrate Judge Hummel's alternative recommendation, in the Report-Recommendation (Dkt. No. 117), that Defendants' motion for summary judgment dismissing the retaliation claim against Defendant Weeks be denied, and the motion otherwise be granted, is adopted in all respects; and it is further

ORDERED that Defendants' motion for summary judgment (Dkt. No. 105) is **DENIED** in part and **GRANTED** in part, and it is further

ORDERED that Defendants' motion for summary judgment (Dkt. No. 105) is **DENIED** as to Plaintiff's retaliation claim against defendant Weeks, and it is further

ORDERED that Defendants' motion for summary judgment (Dkt. No. 105) is otherwise **GRANTED**, and it is further

ORDERED that Plaintiff's request for counsel is **GRANTED** in part, and that counsel be appointed for the purpose of trial only, and it is further

ORDERED that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York.

IT IS SO ORDERED.

Dated: January 4, 2016

Brenda K. Sannes
U.S. District Judge

2014 WL 6982929
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Lucia VLAD–BERINDAN, Plaintiff,

v.

MTA NEW YORK CITY TRANSIT; Marie Stanley,
Esq.; Jean Doe, Esq.; John Doe, Esq., Defendants.

No. 14–cv–675 (RJS). | Signed
Dec. 9, 2014. | Filed Dec. 10, 2014.

### ORDER ADOPTING REPORT
### AND RECOMMENDATION

RICHARD J. SULLIVAN, District Judge.

**\*1** Plaintiff Lucia Vlad–Berindan, proceeding pro se, brings this employment discrimination action against Defendants MTA New York City Transit, Marie Stanley, Esq., Jean Doe, Esq., and John Doe, Esq ., pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621 et seq., the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12112 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. Plaintiff further asserts that Defendants posted a deceptive job advertisement and sought to incorrectly classify paralegals as independent contractors. Now before the Court is the Report and Recommendation (the "Report") of the Honorable James C. Francis IV, Magistrate Judge, recommending that the Court dismiss Plaintiff's Complaint, without prejudice, for failure to state a claim. For the reasons set forth below, the Court adopts the Report in its entirety.

### I. BACKGROUND

The Court presumes the parties' familiarity with the factual allegations of this action, which are thoroughly set forth in the Report. (Report at 2–6.) On January 27, 2014, Plaintiff commenced this action by filing a standard-form complaint for employment discrimination against Defendants. (Doc. No. 2.) The Court received confirmation of service on June 12, 2014. (Doc. Nos.7, 8.) By Order dated June 16, 2014, the Court referred the case to Judge Francis to oversee general

pretrial matters and to issue reports and recommendations on dispositive motions. (Doc. No. 9.) On July 21, 2014, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 11.) On September 5, 2014, Plaintiff filed her opposition to the motion. (Doc. No. 18.) On September 19, 2014, Defendants filed their reply. (Doc. No. 22.) Judge Francis issued his Report on October 8, 2014. (Doc. No. 23.) On November 7, 2014, Plaintiff filed her objections ("Objections") to the Report (Doc. No. 26), and on November 21, 2014, Defendants filed a response and opposition to Plaintiff's Objections (Doc. No. 27).

### II. LEGAL STANDARD

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see also Fed.R.Civ.P. 72(b)(3). If a party properly objects to a finding in the Report, the Court reviews the finding de novo. 28 U.S.C. § 636(b)(1)(C); see also Fed.R.Civ.P. 72(b)(3). Properly raised objections must be "clearly aimed at particular findings" in the Report. Harden v. LaClaire, No. 07–cv–4592 (LTS), 2008 WL 4735231, at \*1 (S.D.N.Y. Oct. 27, 2008). Therefore, objections may not be "conclusory or general" and may not simply rehash or reiterate the original briefs to the magistrate judge. Thomas v. Astrue, 674 F.Supp.2d 507, 511 (S.D.N.Y.2009). Moreover, objections generally may not be new arguments "that were not raised, and thus were not considered, by the magistrate judge." Jackson v. Brandt, No. 10–cv–05858 (PAC), 2012 WL 2512015, at \*6 (S.D.N.Y. June 29, 2012); see also Berbick v. Precinct 42, 977 F.Supp.2d 268, 273 (S.D.N.Y.2013) ("A motion referred to a magistrate judge is not a trial run."(alterations and internal quotation marks omitted)).

**\*2** Absent proper objections, the Court accepts all parts of the Report that are not clearly erroneous. See Berbick, 977 F.Supp.2d at 273. Thus, the Court reviews a party's improper objections, including those that seek a "second bite at the apple" by "attempt[ing] to relitigate the entire content" of the arguments made before the magistrate judge, only for clear error. Thomas, 674 F.Supp.2d at 511. In clear error review, the Court should reverse a finding only if it is "left with the definite and firm conviction that a mistake has been committed," and not merely if it "would have decided the case differently." Easley v. Cromartie, 532 U.S. 234, 242, 121

S.Ct. 1452, 149 L.Ed.2d 430 (2001) (internal quotation marks omitted).

## III. DISCUSSION

The Report recommends that the Court grant Defendants' motion and dismiss Plaintiff's Complaint without prejudice. To briefly summarize, with respect to the employment discrimination claims, the Report finds that Plaintiff has failed to establish a prima facie case for her Title VII claim, and has not alleged facts to support an inference of discrimination for her ADEA claim and ADA claims. (*See* Report at 16, 19, 21.) The Report further finds that Plaintiff's remaining claims fail in part because they are "not premised on identifiable federal or state law."(*Id.* at 24.) Nevertheless, the Report recommends that Plaintiff be given an opportunity to amend her Complaint "[b]ecause there is some prospect, however slim, that the plaintiff could state a valid claim ...." (*Id.* citing *Gomez v. USAA Federal Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999).) Plaintiff's Objections, which consist of a background statement and fifty numbered paragraphs, fail to address the Report's legal conclusions and are instead largely conclusory assertions that reiterate factual allegations and arguments already presented to Judge Francis. Accordingly, the Court reviews the Judge Francis's comprehensive and well-written twenty-six page Report for clear error. Having reviewed the Report and finding no clear error, the Court adopts the Report in its entirety. Indeed, the Court would reach the same result even under a de novo standard of review.

## IV. CONCLUSION

For the reasons set forth above, the Court adopts Judge Francis's well-reasoned Report and GRANTS Defendants' motion to dismiss. The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry 11. To the extent that Plaintiff wishes to amend her Complaint, she must file a motion to amend no later than January 9, 2015. The motion should include a proposed amended complaint, which shall state with specificity Plaintiff's contemplated claims. Plaintiffs motion shall also indicate whether she has properly exhausted her administrative remedies with respect to each of her contemplated claims. If Plaintiff does not file a motion requesting leave to amend by January 9, 2015, this case will be closed with prejudice.

**\*3** SO ORDERED.

### *REPORT AND RECOMMENDATION*

JAMES C. FRANCIS IV, United States Magistrate Judge.

TO THE HONORABLE RICHARD J. SULLIVAN, U.S.D.J.:
Lucia Vlad–Berindan brings this employment discrimination action *pro se* pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621 *et seq.,* the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12112 *et seq.,* and the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.,* alleging that the defendants—the New York City Transit Authority (the "Transit Authority"), Marie Stanley, and two other unnamed attorneys—failed to hire her because of her race, national origin, age, and disability. She further alleges that the defendants retaliated against her for asserting her rights under the ADA, posted a deceptive job advertisement, and sought to incorrectly classify paralegals as independent contractors. The defendants move to dismiss all counts pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, I recommend that the plaintiff's complaint be dismissed without prejudice.

### *Background* [1]

[1]      The background in this case is drawn from Ms. Vlad–Berindan' s complaint and supplemented by her affirmation in opposition to the motion to dismiss where the affirmation adds clarity to the originally pled facts. Although a court is typically confined when considering a motion to dismiss to "the allegations contained within the four corners of [the] complaint," *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 71 (2d Cir.1998), *pro se* pleadings are to be liberally construed, *see Harris v. Mills,* 572 F.3d 66, 71–72 (2d Cir.2009). When analyzing a *pro se* pleading, a court may therefore consider factual allegations contained in the plaintiff's opposition papers and other court documents. *See Torrico v. International Business Machines Corp.,* 213 F.Supp.2d 390, 399 n. 4 (S.D.N.Y.2002).

### A. *Factual Allegations*

Ms. Vlad–Berindan holds an Associate of Applied Science degree in Paralegal Studies and was, at the time relevant to her claims, pursing a Bachelor of Science degree in

Legal Studies at the New York City College of Technology ("City Tech"). (Attachment to Complaint for Employment Discrimination ("Compl."), ¶ 1; Affirmation of Lucia Vlad–Berindan in Opposition to Motion to Dismiss dated Sept. 5, 2014 ("Vlad–Berindan Aff.") at 1–2). She self-identifies as a white person of Romanian national origin. At the time when the alleged employment action occurred, she was fifty-four years old. (Complaint for Employment Discrimination ("Compl.Form"), ¶ II(D)). She also self-identifies as having a disability resulting from a recent surgery, which rendered her unable to lift more than ten pounds of weight or to stand for prolonged periods of time. (Compl.Form, ¶ II(D); Compl., ¶ 10).

One of the requirements for Ms. Vlad–Berindan's Legal Studies degree was that she complete a 160–hour internship in a law office approved by her school. (Compl., ¶¶ 1, 6; Vlad–Berindan Aff. at 2). City Tech has an arrangement with the Transit Authority (as well as several other "partner" offices) under which the Transit Authority provides internship opportunities to the college's students. (Vlad–Berindan Aff. at 2). In February 2013, Ms. Vlad–Berindan submitted an application for an unpaid internship to Ms. Stanley, an attorney in the Transit Authority Torts Division (Compl., ¶¶ 2–4; Vlad–Berindan Aff. at 2), intending to fulfill her college requirement through the internship. (Compl., ¶ 6).

On February 13, 2013, Ms. Vlad–Berindan was interviewed by three Transit Authority attorneys—Ms. Stanley and two other individuals identified as "Jean Doe, Esq." and "John Doe, Esq." (Compl., ¶¶ 3–5, 12). She does not provide any information regarding the content of her first interview, which was with Ms. Doe. (Compl., ¶ 4).

**\*4** During her second interview, Ms. Stanley informed Ms. Vlad–Berindan that the office was hiring for two positions, an unpaid internship and a one-year paralegal-contractor position, which was to pay ten dollars per hour. (Compl., ¶ 5; Vlad–Berindan Aff. at 2). While Ms. Vlad–Berindan initially indicated that she was only applying for the internship, she subsequently agreed during the interview (on Ms. Stanley's suggestion) to be considered for both, with the intention of first completing her 160–hour internship requirement and then continuing to work as a paid paralegal-contractor. (Compl., ¶¶ 5–9). Ms. Stanley suggested that Ms. Vlad–Berindan would work for fewer than eight hours per day as a paralegal-contractor because the position was for a limited number of hours per year. (Compl., ¶ 8).

Ms. Vlad–Berindan disclosed to Ms. Stanley during the interview that she had recently undergone surgery and, as a result, was unable to work more than six hours per day. (Compl., ¶ 9). She told Ms. Stanley that she planned to work a few hours per day until her health improved. (Compl., ¶ 10). She also disclosed that she was not able to lift heavy objects due to the recent surgery. (Compl., ¶ 10). Ms. Stanley "[t]hen ... asked [the] plaintiff when she could start working," and "seemed to like [the] plaintiff." (Compl., ¶ 11).

Ms. Vlad–Berindan was next interviewed by Mr. Doe. (Compl., ¶¶ 12–13). Mr. Doe "asked [ ] the same questions as the previous two interviewers."(Compl., ¶ 13). Additionally, he asked Ms. Vlad–Berindan what country she was from, told her that he had other acquaintances from Romania, and volunteered that he was from Nigeria. (Compl., ¶ 13)."Then he asked [Ms. Vlad–Berindan] if she speaks French, and for a while [the] interview was in French."(Compl., ¶ 13). Ms. Vlad–Berindan states that Mr. Doe "seemed to be very nice" (Compl., ¶ 13), but at one point "turned mad" when discussing the suddenness of his last paralegal's departure, emphasizing that it was important that Ms. Vlad–Berindan be willing to commit to a full year of work (Compl., ¶ 14). Mr. Doe and Ms. Vlad–Berindan discussed the arrangement proposed by Ms. Stanley, under which Ms. Vlad–Berindan would complete the 160–hour internship prior to beginning her part-time work as a paralegal-contractor. (Compl., ¶¶ 14–15).

Although Ms. Stanley indicated to Ms. Vlad–Berindan that she would call her about the positions by 5:00 p.m. the day of the interview, she did not contact the plaintiff thereafter. (Compl., ¶ 16). Ms. Vlad–Berindan called Ms. Stanley's office, but did not receive a response. (Compl., ¶ 16). Ms. Vlad–Berindan's classmates later informed her that a new advertisement for positions at the Transit Authority had been posted at their college. (Compl., ¶ 20).

Ms. Vlad–Berindan states that the three lawyers who interviewed her were all "non white" (Compl., ¶ 22), and that "during her interview with the [Transit Authority] she did not see any white employee[s] in the offices where she was, including paralegals she was introduced to" (Compl., ¶ 23). She "believes that after she left the interview, the three non white interviewers decided that [she] was not good enough for them because [she] was[ ] too weak and disabling [sic] [,] too white and blonde, too over 40 years old [sic] and too East European [ ] to work[,] learn[, and] practice as an intern paralegal [for] 160 hours in their office" (Compl., ¶

22), and that "all or some of her interviewer [s] do[ ] not like white people to work with" (Compl., ¶ 23). Ms. Vlad–Berindan notes that "paralegal [s] need[ ] to lift and [ ] sometime[s] carry] very heavy files," and alleges that she would required a rolling shelf and document case to accommodate her disability, had she been hired.[2] (Compl., ¶ 29). She further alleges that the Transit Authority always intended to hire one person to fill both the intern position and the paralegal-contractor position, despite having posted two separate employment opportunities (Compl., ¶¶ 27, 46), and that they intended to improperly classify the paralegal-contractor as an independent contractor to evade taxes (Compl., ¶¶ 27, 48).

[2]      She does not allege that this issue was addressed during any of her interviews.

**B.** *Procedural History*
 **\*5** On July 26, 2013, Ms. Vlad–Berindan filed a charge with the Equal Employment Opportunity Commission ("EEOC") regarding the defendants' alleged discriminatory conduct. (Compl.Form, ¶ III(A)). The EEOC issued a Notice of Right to Sue letter, which Ms. Vlad–Berindan received on November 1, 2013. (Compl. Form, SI III(B)). On January 27, 2014, Ms. Vlad–Berindan filed this lawsuit. She seeks an award of compensatory damages, punitive damages, and attorneys' fees. (Compl., § IV).

*Discussion*

**A.** *Legal Standard*
In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam); *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 110–11 (2d Cir.2010). A complaint need not contain detailed factual allegations, but it must contain more than mere " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the requirements of Rule 8(a) of the Federal Rules of Civil Procedure. *Id. at* 679. Though a plaintiff may plead facts alleged upon information and belief

"where the belief is based on factual information that makes the inference of culpability plausible," *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir.2010), such allegations must be "accompanied by a statement of the facts upon which the belief is founded," *Prince v. Madison Square Garden,* 427 F.Supp.2d 372, 385 (S.D.N.Y.2006) (internal quotation marks omitted).

*Pro se* complaints are held to less stringent standards than those drafted by attorneys. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Boykin v. KeyCorp,* 521 F.3d 202, 213–14 (2d Cir.2008) (citing *Erickson,* 551 U.S. at 94). Pleadings of *pro se* parties should be read " 'to raise the strongest arguments that they suggest.' " *Kevilly v. New York,* 410 F. App'x 371, 374 (2d Cir.2010) (quoting *Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir.2006)). Even after the Supreme Court's ruling in *Iqbal,* which imposed heightened pleading standards for all complaints, *pro se* complaints are to be liberally construed. *See Harris v. Mills,* 572 F.3d 66, 71–72 (2d Cir.2009). Nevertheless, dismissal of a *pro se* complaint is appropriate where a plaintiff has clearly failed to meet minimum pleading requirements. *See Rodriguez v. Weprin,* 116 F.3d 62, 65 (2d Cir.1997); *accord Leak v. Schriro,* Nos. 11 Civ. 8023, 12 Civ. 618, 2013 WL 1234945, at *2 (S.D.N.Y. Feb.20, 2013), *report and recommendation adopted,*2013 WL 1248620 (S.D.N.Y. March 27, 2013).

**B.** *Claims Raised in Opposition to Motion to Dismiss*
 **\*6** As an initial matter, I address the substantial factual allegations and several new claims raised for the first time in the plaintiff's affirmation in opposition to the motion to dismiss. The plaintiff alleges, in brief, that subsequent to the filing of this Complaint, she interviewed with the Transit Authority for a similar opportunity to complete a 120–hour internship followed by a one-year contract position as a paralegal. (Vlad–Berindan Aff. at 4–5). She alleges that she was offered both the internship and the paralegal-contractor position, and accepted both positions in March 2014. (Vlad–Berindan Aff. at 4–5). Once she had completed the 120–hour internship, she expected to begin to work as a paid paralegal-contractor, but instead was wished good luck by her supervisor and asked to return her office key. (Vlad–Berindan Aff. at 5–6). Ms. Vlad–Berindan alleges that the position of paralegal-contractor was still open at this point, and claims that the Transit Authority's refusal to hire her for this position constituted "a continuity [sic] of the [earlier] job discrimination ."(Vlad–Berindan Aff. at 6). She further claims that the Transit Authority's failure to pay her minimum

wage during her internship constituted a violation of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the Thirteenth Amendment. (Vlad–Berindan Aff. at 8–11).

In evaluating the legal sufficiency of a *pro se* plaintiff's claims, a court may rely on the plaintiff's opposition papers. *See Crum v. Dodrill,* 562 F.Supp.2d 366, 373 n. 13 (N.D.N.Y.2008) (citing *Gadson v. Goord,* No. 96 Civ. 7544, 1997 WL 714878, at * 1 n. 2 (S.D.N.Y. Nov.17, 1997))."This extension of the usual principles applicable to a Rule 12(b)(6) motion applies to factual allegations that are consistent with those contained in the complaint."*Rosado v. Herad,* No. 12 Civ. 8943, 2013 WL 6170631, at *3 (S.D.N.Y. Nov.25, 2013) (citing *Richardson v. New York,* 10 Civ. 6137, 2012 WL 76910, at *1 n. 10 (S.D.N.Y. Jan.9, 2012)), *report and recommendation adopted in part and modified in part on other grounds,*2014 WL 1303513 (S.D.N.Y. March 25, 2014); *accord Braxton v. Nichols,* No. 08 Civ. 8568, 2010 WL 1010001, at *1 (S.D.N.Y. March 18, 2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss."). Further, to the extent claims alleged for the first time in motion papers could have been asserted based on the facts alleged in the complaint, they should be considered. *See Finch v. New York,* No. 10 Civ. 9691, 2012 WL 2866253 (S.D.N.Y. May 30, 2012) (finding that while "a plaintiff cannot amend her complaint through an opposition to a motion to dismiss," the court "should read the facts alleged in a *pro se* plaintiff's complaint for whatever claims may properly be based on such facts").

However, "[e]ntirely new claims [ ] are not given such liberal treatment."*Rosado,* 2013 WL 6170631, at *3; *accord Bernstein v. City of New York,* No. 06 Civ. 895, 2007 WL 1573910, at *10 (S.D .N.Y. May 24, 2007) (finding in *pro se* case that "[n]ew claims not specifically asserted in the complaint may not be considered by courts when deciding a motion to dismiss" (alteration in original) (internal quotation marks omitted)). Where a plaintiff's motion papers assert entirely new claims that do not arise out of the facts alleged in the complaint, the court need not consider them. *See Bernstein,* 2007 WL 1573910, at *10; *compare Turner v. Sidorowicz,* No. 12 Civ. 7048, 2014 WL 641454, *10 n. 11 (S.D.N.Y. Feb.18, 2014) ("not purport[ing] to substantiate a new claim brought in opposition to the motion to dismiss," but treating such new claim as part of *pro se* complaint through liberal reading of originally pled facts), *and Lang v. New York City Health and Hospitals Corp.,* No. 12 Civ.

5523, 2013 WL 4774751, at *4 (S.D.N.Y. Sept. 5, 2013) (noting that complaints may not be amended through briefs in opposition to motions to dismiss, but considering new claims because opposition "simply articulates additional claims that [*pro se* plaintiff's] original complaint could have been construed to allege"), *with Conkling v. Brookhaven Science Associates, LLC,* No. 10 CV 4164, 2012 WL 2160439, at *6 n. 6 (E.D.N .Y. June 12, 2012) (declining to consider claims raised in opposition to motion to dismiss regarding facts that allegedly occurred after amended complaint was filed), *and Jones v. Chicago Board of Education,* No. 11 C 8326, 2013 WL 1499001, at *2 (N.D.Ill. April 10, 2013) (declining to review allegations of "separate independent acts of discrimination" raised in *pro se* opposition to motion to dismiss, and noting that only new factual allegations clarifying original claims can be considered).

**\*7** In this case, the plaintiff has asserted several new claims based not only on newly asserted facts, but on facts that are alleged to have occurred after the Complaint was filed. (Vlad–Berindan Aff. at 4–6). She could not have cognizable FLSA, NYLL or Thirteenth Amendment claims based on the originally pled facts, as the Complaint did not allege that she actually completed any work for the Transit Authority. Further, the new employment discrimination claims alleged in Ms. Vlad–Berindan's opposition to the motion to dismiss are, as Ms. Vlad–Berindan acknowledges, unexhausted because she has not yet received a right-to-sue letter.[3] (Vlad–Berindan Aff. at 6). I therefore do not consider the new claims raised in Ms. Vlad–Berindan's opposition to the motion to dismiss in this report and recommendation, but recommend that Ms. Vlad–Berindan be granted leave to re-plead these claims.[4]

3    Under Title VII, the ADEA, and the ADA, a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter. 42 U.S.C. § 2000e5(e)-(f) (Title VII exhaustion procedures); 29 U.S.C. § 626(d) (ADEA exhaustion procedures); 42 U.S.C. § 12117(a) (ADA exhaustion procedures); *see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir.2001) (Title VII and ADEA); *Vargas v. Reliant Realty,* No. 13 Civ. 2341, 2014 WL 4446165, at *9 (S.D.N.Y. Sept.9, 2014) (ADA).

4    I do, however, caution the plaintiff that she is not likely to prevail on these claims, should she choose to file them. An individual who volunteers her services to a public agency without the expectation of compensation,

who is free from employer coercion to perform unpaid services, and who is not already employed by the public agency to render the same type of services, is considered a "volunteer" not subject to the minimum wage requirements of the FLSA. 29 U.S.C. § 203(e)(4)(A); 29 C.F.R. § 553.101. Public agencies therefore have far more latitude than for-profit entities to benefit from the labor of unpaid interns. *Cf. Glatt v. Fox Searchlight Pictures, Inc.,* 293 F.R.D. 516, 530–32 (S.D.N.Y.2013) (discussing six criteria for determining whether an intern at a for-profit entity may be unpaid under FLSA and NYLL). With respect to the employment discrimination claims asserted in the plaintiff's opposition papers, the plaintiff may be guided by the discussion below.

### C. *Employment Discrimination Claims*

#### 1. *Individual Liability*

Ms. Vlad–Berindan asserts employment discrimination claims against Ms. Stanley, Ms. Doe, and Mr. Doe in their individual capacities. (Compl., ¶¶ 33–44). However, it is well-established that individuals may not be held personally liable under Title VII, *Patterson v. County of Oneida, New York,* 375 F.3d 206, 221 (2d Cir.2004); under the ADA, *Vargas v. Reliant Realty,* No. 13 Civ. 2341, 2014 WL 4446165, at *9 (S.D.N.Y. Sept.9, 2014); under the Rehabilitation Act, *Nelson v. City of New York,* No. 11 Civ. 2732, 2013 WL 4437224, at *14 (S.D.N.Y. Aug. 19, 2013); or under the ADEA, *Parker v. Metropolitan Transportation Authority,* 97 F.Supp.2d 437, 452 (S.D.N.Y.2000). The plaintiff's employment discrimination claims against Ms. Stanley, Ms. Doe, and Mr. Doe are therefore barred as a matter of law.

#### 2. *"Employee" Status*

The defendants argue that Ms. Vlad–Berindan cannot assert employment discrimination claims under Title VII, the ADEA, the ADA, and the Rehabilitation Act because the position for which she applied was an unpaid internship. (Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def.Memo.") at 5–7). The defendants cite case law and statutes establishing that employment discrimination claims are only available to "employees," and that remuneration is an "essential consideration" of employment status under all four statutes. (Def. Memo. at 5–6 (citing 29 U.S.C. § 793(d) (Rehabilitation Act); *Castellano v. City of New York,* 142 F.3d 58, 69 (2d Cir.1998) (ADA); *O'Connor v. Davis,* 126 F.3d 112, 116 (2d Cir.1997) (Title VII); *EEOC v. Johnson & Higgins, Inc.,* 91 F.3d 1529, 1538 (2d Cir.1996) (ADEA)). While the defendants acknowledge that Ms. Vlad–

Berindan "expressed interest in a paid, part-time position during her series of interviews," they contend that she "had not applied for that position and did not interview for that position."(Def. Memo. at 7).

Ms. Vlad–Berindan alleges that while she originally submitted her resume with the goal of being considered for an unpaid internship (Compl., ¶¶ 1–3), she was invited to also be considered for a paid paralegal-contractor position, and accepted that invitation (Compl., ¶¶ 5–9). The salary for the paralegal-contractor position was to be ten dollars per hour. (Vlad–Berindan Aff. at 2). Much of Ms. Vlad–Berindan's interview with Ms. Stanley focused on the paralegal-contractor position (Compl., ¶¶ 7–8), and Mr. Doe "did not mention anything about the internship plaintiff was seeking," but focused his interview questions solely on the paralegal-contractor position (Compl., ¶ 14). Accepting as true all well-pleaded facts alleged in the Complaint and drawing all reasonable inferences in the plaintiff's favor, Ms. Vlad–Berindan has sufficiently pled that she applied for employment as defined under Title VII, the ADEA, the ADA, and the Rehabilitation Act and that she is entitled to the protections of those statutes. The question remains, however, whether she has stated plausible employment discrimination claims against the Transit Authority on which relief could be granted.

#### 3. *Title VII Claims*

**\*8** Ms. Vlad–Berindan alleges that the defendants refused to hire her because of her race in violation of Title VII. (Compl., ¶¶ 22, 34). Based on her allegation that the defendants decided she was not only "too white" but also "too East European" (Compl., ¶ 22), I read the Complaint to also assert a Title VII claim based on national origin.

In determining whether a claim for employment discrimination survives a motion to dismiss, the Court is guided by the elements required to make out a prima facie case. These are: (1) membership in a protected class; (2) qualification for the position; (3) suffering of an adverse employment action; and (4) circumstances giving rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Weinstock v. Columbia University,* 224 F.3d 33, 42 (2d Cir.2000). In order to sustain a discrimination claim based on a failure to hire, "a plaintiff must allege that she applied for an available position for which she was qualified and was rejected under circumstances giving rise to an inference of unlawful discrimination."*Wang v.

*Phoenix Satellite Television U.S., Inc.,* 976 F.Supp.2d 527, 537 (S.D.N.Y.2013) (citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

However, "[t]he prima facie case under *McDonnell Douglas* [ ] is an evidentiary standard, not a pleading requirement."*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510–11, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *see also Boykin v. KeyCorp.,* 521 F.3d 202, 212 (2d Cir.2008). Accordingly, "a plaintiff alleging employment discrimination need not plead facts establishing a plausible prima facie case of discrimination to survive a motion to dismiss."*Schwab v. Smalls,* 435 F. App'x 37, 40 (2d Cir.2011). Under the pleading standard established in *Swierkiewicz,* an employment discrimination claim need only "be facially plausible and must give fair notice to the defendants of the basis for the claim."*Barbosa v. Continuum Health Partners, Inc.,* 716 F.Supp.2d 210, 215 (S.D.N.Y.2010) (internal quotation marks omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."*Iqbal,* 556 U.S. at 678; *accord Turkman v. Ashcroft,* 589 F.3d 542, 546 (2d Cir.2009)."For this conclusion to be drawn, a plaintiff must allege facts that allow the court in substance to infer elements of a *prima facie* case."*King v. U.S. Security Associates,* No. 11 Civ. 4457, 2012 WL 4122025, at *5 (S.D.N.Y. Aug. 22, 2012) (collecting cases).

In this case, Ms. Vlad–Berindan has alleged facts sufficient for the court to infer the first three elements of the prima facie case required under Title VII. She alleges (1) that she is white and Romanian (Compl.Form,¶ II(D)); (2) that she holds an Associate of Applied Science degree in Paralegal Studies, was pursing a Bachelor of Science degree in Legal Studies when she applied for the position (Compl., ¶ 1), and was in fact invited to apply for the paralegal-contractor position in addition to the unpaid internship based on these qualifications (Compl., ¶¶ 5–6); and (3) that she was not hired. However, the circumstances Ms. Vlad–Berindan alleges do not give rise to an inference of unlawful discrimination based on race or national origin.

**\*9** In support of her race discrimination claim, Ms. Vlad–Berindan alleges that all three interviewers were "non white" and that during her interview, she "did not see any white employee[s], including paralegals she was introduced

to."(Compl., ¶¶ 22–23). While the demographics of an office may be relevant in a failure-to-hire employment discrimination case, they are not sufficiently pled in this case to give rise to an inference of unlawful discrimination. Courts have dismissed failure-to-hire cases in which plaintiffs have alleged significant under-representation of members of their protected classes in the defendant-employers' staffs. *See, e.g., Lott v. Kmart,* No. 13 CV 990, 2014 WL 1884406, at *1 (S.D.Ohio May 9, 2014) (finding allegation by *pro se* male plaintiff who on two occasions observed that all cashiers working at defendant store were women insufficient to raise inference of sex discrimination); *Chandler v. University of Pennsylvania,* 927 F.Supp.2d 175, 179 (E.D.Pa.2013) (finding plaintiff's statistical evidence of the under-representation of African Americans in defendant university's graduate student body and faculty insufficient to plausibly claim intentionally discrimination based on race). The fact that the defendants "have hired people who are of a different race ... from [Ms. Vlad–Berindan] does not suggest that the [ ][d]efendants failed to hire *her* on account of her race...."*Riddle v. Citigroup,* 13 Civ. 6833, 2014 WL 2767180, at *3 (S.D.N.Y. May 29, 2014). Ms. Vlad–Berindan does not indicate that any of her interviewers were hostile towards her. (Compl., ¶¶ 11, 13). Although she alleges that the position remained posted on her college campus some time after her interview (Compl., ¶ 20), she does not allege that the person who was ultimately hired was not white. While "[i]n failure to hire cases, a plaintiff may demonstrate circumstances giving rise to an inference of discrimination by showing that the defendant continued to solicit applications for the position applied to and hired someone outside of the plaintiff's protected class,"*Ghosh v. New York City Department of Health,* 413 F.Supp.2d 322, 332 (S.D.N.Y.2006) (internal quotation marks omitted), the fact that a position remained open for some time is not on its own sufficient to raise an inference of discrimination. Because Ms. Vlad–Berindan has not alleged facts sufficient to raise an inference of race-based discrimination, I recommend that the Title VII claim premised on race be dismissed.

The only facts Ms. Vlad–Berindan pleads in relation to her national origin claim are that Mr. Doe, "who seemed to be very nice," asked her what country she was from, "told [her] he knew other people from her country, and [ ] told [her] that he is from Nigeria."(Compl., ¶ 13). The Complaint indicates that after this exchange, Mr. Doe continued to interview Ms. Vlad–Berindan about whether she could commit to working for a full year, and discussed the possibility that she would be hired for the internship and paralegal-contractor position, to

be completed successively. (Compl., ¶¶ 14–15). These facts do not raise an inference of discrimination. Accordingly, I recommend that the Title VII claim premised on national origin also be dismissed.

**4.** *ADEA Claim*

**\*10** Under the ADEA, it is illegal for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To qualify for protected status under the ADEA, a plaintiff must be "at least 40 years of age." 29 U.S.C. § 631(a); *Liburd v. Bronx Lebanon Hospital Center,* No. 07 Civ. 11316, 2008 WL 3861352, at \*6 (S.D.N.Y. Aug. 19, 2008). To establish a disparate-treatment claim under the ADEA, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision. *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 175–76, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). As in the Title VII context, the *prima facie* elements provide only a guide-post for the adjudication of a motion to dismiss, not a pleading requirement. *See Fitzgerald v. Signature Flight Support Corp.,* No. 13 Civ. 4026, 2014 WL 3887217, at \*4 (S.D.N.Y. Aug.5, 2014); *see also Swierkiewicz,* 534 U.S. at 508. Thus, "while an ADEA plaintiff need not plead but-for causation, his complaint must contain sufficient facts to make plausible the conclusion that but for his age, he would not have suffered the challenged action." *Williams v. Addie Mae Collins Community Service,* No. 11 Civ. 2256, 2012 WL 4471544, at \*3 (S.D.N.Y. Sept. 27, 2012) (internal quotation marks and brackets omitted); *accord Fagan v. U.S. Carpet Installation, Inc.,* 770 F.Supp.2d 490, 497 (E.D.N.Y.2011).

Ms. Vlad–Berindan was fifty-four years old when she interviewed with the Transit Authority in February 2013 (Compl.Form, ¶ II(D)), and therefore qualified for protection under the ADEA. However, she does not allege any facts in support of her conclusory statement that she was not hired because the "interviewers decided that [she] was ... too over 40 years old...." (Compl., ¶ 22). She therefore has not raised an inference of age discrimination. *See Munoz–Nagel v. Guess, Inc.,* No. 12 Civ. 1312, 2013 WL 1809772, at \*7 (S.D.N.Y. April 30, 2013) (dismissing ADEA claim where plaintiff alleged only that defendant preferred to hire younger applicants and that she believed younger interviewees were hired instead of her). I therefore recommend that the ADEA claim be dismissed.

**5.** *ADA and Rehabilitation Act Claims*

Ms. Vlad–Berindan alleges both that the defendants refused to hire her because of her disability in violation of the ADA and the Rehabilitation Act and that they retaliated against her for exercising her rights under the ADA.

**a.** *Failure to Hire*

The ADA prohibits discrimination against any "qualified individual on the basis of disability," including with respect to hiring decisions. 42 U.S.C. § 12112(a). A prima facie case of discrimination under the ADA requires showing that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA; (3) the plaintiff is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of her disability. *See Rios v. Department of Education,* 351 F. App'x 503, 505 (2d Cir.2009). The Rehabilitation Act likewise bars employment discrimination based on disability, as defined in the ADA. 29 U.S.C. § 791(g). An individual may qualify as "disabled" by showing that (1) she has a disability, defined as "a physical or mental impairment that substantially limits one or more major life activity," 42 U.S.C. § 12102(1)(A); (2) she has "a record of" a disability, 42 U.S.C. § 12102(1)(B); or (3) she is "regarded as having" a disability, 42 U.S.C. § 12102(1)(C). As in the Title VII context, these prima facie elements "provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." *Idlisan v. New York City Health and Hospitals Corp.,* No. 12 Civ. 9163, 2013 WL 6049076, at \*4 (S.D.N.Y. Nov.15, 2013) (internal quotation marks omitted).

**\*11** Here, Ms. Vlad–Berindan alleges that she is unable to lift weights in excess of ten pounds or to stand for prolonged periods of time due to a recent surgery. (Compl.Form, ¶ II(D); Compl., ¶ 10). As "lifting" is included in the ADA's definition of "major life activities," *see* 42 U.S.C. § 12102(2)(A), Ms. Vlad–Berindan qualifies as having a disability on these facts. The plaintiff alleges that she informed Ms. Stanley that "due to her surgeries, she could not lift heavy things" (Compl.¶ 10) and could not work for more than six hours per day (Compl., ¶ 9). She does not allege that Ms. Stanley responded negatively to either of these disclosures. Rather, she states that Ms. Stanley "[t]hen ... asked [the] plaintiff when she could start working."(Compl., ¶ 11). The mere fact that an employer was aware of an applicant's disability when deciding not to hire her is insufficient to raise an inference of discrimination. *See Kruger v. Hamilton Manor Nursing Home,* ––– F.Supp.2d

——, ——, 2014 WL 1345333, at *4 (W.D.N.Y.2014); *Mitchell v. New York City Transit Authority,* 856 F.Supp.2d 478, 484 (E.D.N.Y.2012). While Ms. Vlad–Berindan does make a general allegation that paralegals sometimes "need [ ] to lift and carry ... very heavy files," and states that she would have needed a rolling shelf and document case to accommodate her disability (Compl., ¶ 29), she does not allege that this task or her need for accommodation was discussed in any of her interviews. Because the facts alleged are not sufficient to raise an inference of discrimination based on disability, the ADA and Rehabilitation Act failure-to-hire claims should be dismissed.

**b. *Retaliation***

Ms. Vlad–Berindan also raises a retaliation claim under the ADA. (Compl., ¶¶ 43–44). The ADA prohibits retaliation against individuals who have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]."42 U.S.C. § 12203(a). In order to establish a prima facie case of retaliation under the ADA, a plaintiff must show " 'that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action.' " *Weissman v. Dawn Joy Fashions, Inc.,* 214 F.3d 224, 234 (2d Cir.2000) (quoting *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 159 (2d Cir.1999)).

Ms. Vlad–Berindan claims that the conduct described in the Complaint-that is, the failure to hire her—"constitutes retaliation against the Plaintiff because she confessed her medical condition protected by the ADA."(Compl., ¶ 44). However, the disclosure Ms. Vlad–Berindan made does not itself qualify as "protected activity" within the meaning of the Act. 42 U.S.C. § 12203(a). While Ms. Vlad–Berindan has since engaged in "protected activity" by making a charge to the EEOC and filing the instant case, such activity occurred after the alleged adverse employment action. Ms. Vlad–Berindan's retaliation claim should therefore be dismissed.

**D. *Deceptive Advertising Claim***

**\*12** Ms. Vlad–Berindan brings a claim for "Deceptive and Prohibited Job Ads" (Compl. at 8), claiming that the Transit Authority always intended to hire one person for both the internship and the paralegal-contractor position (Compl., ¶

27), and that the separate advertisements for the two positions "constitute [a] violation of federal [l]abor [l]aws, and a discriminatory practice" (Compl.¶ 46).

It is entirely unclear from the Complaint (and not clarified by the opposition papers) which statute Ms. Vlad–Berindan is referencing. The new claims raised in her opposition to the motion to dismiss suggest that she may have intended to claim, under the FLSA, that the Transit Authority would be obligated to pay the minimum wage during the internship portion of this arrangement. However, she would not have standing to raise such a claim, as she does not allege that she actually worked for the Transit Authority as an intern. Alternatively, though she references "federal labor law," it is possible that she intended to bring a false advertising claim under New York General Business Law § 350–a, which prohibits "advertising ... of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."Gen. Bus. Law § 350–a(1). However, this claim would also be barred, as an employer may only be liable for false advertising "if the aggrieved person has [ ] suffered actual pecuniary damage as a result of the misleading advertising of an employment opportunity."Gen. Bus. Law § 350–a(2). Even if the advertising scheme alleged by Ms. Vlad–Berindan would constitute false advertising, she has not alleged that she experienced any pecuniary damage as a result. This claim should therefore be dismissed.

**E. *Employee Classification Claim***

Finally, Ms. Vlad–Berindan asserts a claim of "Employee[ ] Misclassification," alleging that the defendants sought to classify paralegal-contractors as independent contractors to avoid contributing "to the Treasury, the Social Security, and Medicare funds, as well as to state unemployment insurance and workers compensation funds."(Compl. at 8). Like her deceptive job advertisement claim, this claim is not premised on identifiable federal or state law. Further, Ms. Vlad–Berindan has not alleged that she actually worked for the Transit Authority as a paralegal-contractor. This claim should therefore be dismissed.

**F. *Leave to Re–Plead***

The Second Circuit has held that a *pro se* litigant should be afforded at least one opportunity to "amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating

a claim."*Gomez v. USAA Federal Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999) (per curiam). Because there is some prospect, however slim, that the plaintiff could state a valid claim, she should be given an opportunity to amend her complaint.

 **\*13** The plaintiff is cautioned that her amended complaint, should she choose to file one, must state plausible claims on which relief may be granted to avoid dismissal. Facts alleged upon information and belief must be "accompanied by a statement of the facts upon which the belief is founded."*Prince,* 427 F.Supp.2d at 385 (internal quotation marks omitted). Therefore, while the plaintiff may plead that she *believes* she was not hired based on her race, national origin, age, or disability, she must also allege facts that raise a plausible inference of each type of discrimination alleged in support of such a belief. Further, the plaintiff should limit any claims under the FLSA and the NYLL to periods of time during which she actually completed work for the defendants.

Finally, the plaintiff is cautioned that her amended complaint must comply with the strictures of Rule 11 of the Federal Rules of Civil Procedure, including the requirement that all "factual contentions have evidentiary support" or be "likely have evidentiary support after a reasonable opportunity for further investigation or discovery."Fed.R.Civ.P. 11(b)(3).

### Conclusion

For the foregoing reasons, I recommend that the defendants' motion to dismiss (Docket no. 11) be granted without prejudice to the filing of an amended complaint. Pursuant to 28 U.S.C. § 636(b) (1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Richard J. Sullivan, Room 2104, 40 Foley Square, New York, New York 10007, and to the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Dated: Oct. 7, 2014.

**All Citations**

Slip Copy, 2014 WL 6982929

---